25 C.C.P.A. (Patents)

## In re BENCKER.

### Patent Appeal No. 3984.

Court of Customs and Patent Appeals.
April 25, 1938.

Potter, Pierce & Scheffler, of Washington, D. C. (Ralph E. Parker and Charles H. Potter, both of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner rejecting, in view of the prior art, claims 3, 4, and 5 of appellant's application for patent. No claims were allowed.

Claim 3 is illustrative of the claims before us, and reads as follows: "3. In an electrolytic cell working with a mercury cathode, the arrangement of a level positioned iron piece selected from the group consisting of U- and I-pieces being provided with head-walls, the inner walls of the said trough being provided with a lining which protects the walls of the cell against the attack of the decomposition products of the electrolyte and at the same time serves as electric insulator, the bright iron bottom of the cell covered with mercury serving in its whole dimension as current supply of the cathode."

The references cited are: Nolf, 271,-906, February 6, 1883; Thomson, 18,522 (British), August 30, 1898; German patent, 96,020, January 31, 1898; Kelly, 627,193, June 20, 1899; Allen, 862,783, August 6, 1907; Heinemann, 1,176,551, March 21, 1916; Hooper, 1,852,750, April 5, 1932.

The specific improvement in the art disclosed in appellant's application is accurately stated in appellant's brief as follows: "The specific improvement to this art which appellant has made is, in essence, the use of U- or I-beams ( i. e., the conventional iron or steel *structural building elements*) to provide the integral bottom and side walls of such a mercury cathode electrolytic cell. In fabricating a cell tank from such a structural element, metal

end walls are welded to the ends of the beam, the necessary supply and eduction pipes are provided, and the inner surfaces of the side and end walls are coated with a lining of an electrically insulating material which is proof against attack by the liquid and/or gaseous contents of the cell (e. g., a protective coating of rubber, chlorinated rubber, phenol-aldehyde resin composition, or the like). The exposed bright metal upper surface of the web of the U- or I-beam provides the bottom of the cell and constitutes a continuous electrical connection to the cathode (i. e., to the mercury layer supported thereon)."

The patent to Allen relates to an electrolytic cell in which there is a tank formed by a bottom portion made of iron, into which there is placed what is termed a "receptacle," having no bottom other than the iron bottom of the tank, upon which the receptacle rests. The receptacle has side walls, end walls, and a cover. The material of which the side and end walls are composed is not stated in the patent, but the drawings indicate that such walls are made of glass. The iron bottom of the tank is covered with mercury. The receptacle above described is referred to in the patent as the "anode compartment." With respect to the outside tank, the patent states: "Referring to the drawings, —a indicates a tank which is preferably formed of iron, so that the tank together with the mercury therein shall constitute the cathode of the cell. This tank may be formed in any desired manner, and its dimensions may be varied in accordance with the requirements. As illustrated it is rectangular in shape. * * *"

The side walls of the receptacle are not made integral with the bottom of the tank.

The patent to Nolf discloses a "vat or trough," made of hard wood, with its interior coated with a varnish. The bottom element of the tank is made of sheet iron and is flat. The apparatus described is an electrolytic cell "for decomposing chloride of sodium by dynamic electricity into two constituent elements—viz., sodium and chlorine * * *;" the bottom of the "vat or trough" is coated with a layer of mercury and serves as one of the electrodes, the other being composed of certain carbon elements described.

The patent to Heinemann discloses an electrolytic cell having a tank in which there is a bottom plate, over which flows mercury. The inner sides of the tank are provided with insulating layers. The patent does not state of what material the walls or bottom plate of the tank are composed.

The patent to Hooper relates to a tank for use in "metal cleaning, plating and pickling." There is disclosed a "seamless, rivetless steam jacketed tank," the edges of which are electrically welded.

The Kelly patent relates to an amalgam washing chamber and discloses a tank formed of cast iron. It does not comprise an electrolytic cell, nor is any such connected therewith.

The British patent to Thomson relates to an electrolytic apparatus, but it does not state of what material the vessel or tank is composed.

The German patent relates to an electrolytic apparatus, with mercury cathode, and discloses an outer vat of cast iron or the like.

The patent to Allen is the principal reference. The other patents are chiefly relied upon to show that insulating the walls of the tank, and welding the edges to make the tank integral, were old.

The Patent Office tribunals combined the references to negative patentability. It was conceded by them that appellant's structure is novel and useful.

The Board of Appeals in its decision stated:

"The subject matter of the appealed claims is an electrolytic cell used in the making of caustic soda in which mercury is used as a cathode. It is admitted that the process carried out is old and the only feature of alleged novelty resides in the use of a section of a U- or I-beam in forming the body of the cell. It is well known that cells of this type are subjected to hard usage and it is therefore essential that they may be made strong and rugged. Appellant discovered that a section of a beam of the type stated could be used very successfully. It is probable that in making up the cell in this way more metal is used than is necessary, but structural steel is quite common and the cost of the same is comparatively moderate. If the device possesses any merit, it is obvious that *it must reside in the broad concept only for after such concept it is obvious that the construction of the cell involves only con-*

*ventional steps.* There is obviously no invention involved in the welding of heads in the upper side of the beam so as to convert the trough into a shallow pan and it is also believed to be obvious that the side walls of such structure would have to be insulated against passage of current and also against the corrosive actions of the gases resulting as by-products.

"While it is true that no one of the patents shows an electrolytic cell which closely resembles in outward appearance that claimed, still it does show that it is common to make same of iron such as in the patent to Allen where the iron forms the lower wall of the cell. It is also common to insulate the side walls of the cell as shown in the patents to Nolf and Heinemann. There is obviously no invention involved in the arrangement of the electrodes." (Italics ours.)

In passing upon a petition for reconsideration, the Board of Appeals stated: "This is a petition for reconsideration of our decision dated March 29, 1937 holding that claims 3, 4 and 5 were unpatentable over the prior art. We have carefully reviewed our former decision and are still of the opinion that the claims were properly rejected. As stated in the decision, whatever merit there may be in this case must reside in the broad concept of using a section of a "U" or "I" beam for making the major portion of the cell. *After this idea was once conceived it is obvious that the things which appellant has done to make an operative cell amounted to nothing more than mechanical skill.*" (Italics ours.)

In each of its decisions the Board of Appeals seems to have held that the broad concept of an electrolytic cell embodying the elements set forth in the claims was not a matter for consideration in determining the patentability of the claims. We agree that, after such combination of old elements was conceived, there was no invention in employing the conventional steps of welding and insulating the interior walls of the cell, but the conception of a combination of elements producing a novel and useful structure is often the very essence of invention.

The creative concept of appellant should be considered in its entirety in order to determine whether his claims are allowable. In re Hofmann, 95 F.2d 257, 25 C.C.P.A., Patents ——.

Appellant conceived that an I beam could be utilized in the making of an electrolytic cell, and that, in connection with such I beam, head walls should be provided and the inner walls should be lined with a material serving as an electrical insulator. We gravely doubt whether such a structure would be obvious to one skilled in the art after examining the cited references.

Therefore, in accordance with the rule that such doubt should be resolved in favor of the applicant, we hold that the involved claims should be allowed, and the decision of the Board of Appeals is reversed.

Reversed.