**Application of CUSTER.**
**Patent Appeal No. 5510.**

United States Court of Customs
and Patent Appeals.
March 1, 1949.

Garvey & O'Connell, of Washington, D.
C. (B. F. Garvey and J. A. O'Connell,
both of Washington, D. C., of counsel),
for appellant.

W. W. Cochran, of Washington, D. C.
(H. S. Miller, of Washington, D. C., of
counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and
HATFIELD, JACKSON, O'CONNELL
and JOHNSON, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the
Board of Appeals of the United States
Patent Office affirming the decision of the
Primary Examiner rejecting claims 5, 6,
and 7 in appellant's application for a patent
for an invention of "new and useful im-
provements in an aeroplane." Each of the
appealed claims was rejected as lacking in-
vention over the prior art, while claims 5
and 7 were also rejected as being aggrega-
tive, and claim 5 was additionally rejected
as lacking clarity. Claims 17 and 18 were
rejected by the Primary Examiner as be-
ing unpatentable in view of the prior art;
however, the board, while affirming the
examiner's rejection of those claims, recom-
mended their allowance if amended in the
manner suggested in the board's decision.
The recommended amendment was made

by appellant, and claims 17 and 18 are not before us on appeal.

The references cited by the examiner and the board are: Henter et al., 1,868,832, July 26, 1932; Stipa, 1,873,505, Aug. 23, 1932; Henter, 2,194,596, Mar. 26, 1940; Stipa (French), 796,984, Feb. 3, 1936.

The appealed claims read as follows:

"5. An aeroplane including a fuselage, wings on the fuselage, each of the wings being provided with a channel arranged in the direction of flight of the aeroplane, the channels opening upwardly and extending from the front to the rear edges of the wing and propellors carried by the fuselage and positioned to operate adjacent the aft ends of the wing channels the distance between each propeller disc and the aft end of its corresponding channel being less than one-sixth of the diameter of the disc.

"6. An aeroplane including a fuselage, a channel wing opening upwardly, carried by each side of the fuselage the depth of the channel being constant from the front to the rear edges of the wing, and means for creating low air pressure areas in the wing concavities whereby static lift is effected.

"7. An aeroplane including a fuselage, concave wings carried by the fuselage, landing control means carried by said wings, certain of the controls being within and the others beyond the lateral extent of said wing concavities, and means for creating low air pressure areas in the wing concavities."

Appellant's invention consists of the combination of a standard fuselage and empennage with concave, channel, or scoop-like air foil type wings opening upward and provided with parallel aligned ailerons supported by spars traversing the upper opening of the concave channel wing; aileron equipped wing tips laterally extending from the outer extremity of the channel wings in the plane of the spars before mentioned; and, a propeller supported from each side of the fuselage positioned adjacent the rear edge of the channel wing surfaces so that the lower semi-circle of the disc of rotation of each propeller coincides with the arc of the rear surface of the channel wings.

The effect of the propellers pulling the air through the channel formed by the inner surface of the concave wings is said to be the production of such a low pressure area within the channel area that the lift coefficient of the wings is augmented to an unexpected degree. The aileron or flap landing control affixed to the spar above the channel opening, and lowerable into the channel area, assists in reducing air speed without sacrificing lift. The increased lift factor together with the landing control means permits the use of the full force of the engine in landing and taking off, the propeller producing lift at the expense of forward motion without sacrificing stability.

The advantages claimed for the invention may be summarized as: a retention of maximum speed, an increase in the dynamic as well as static stability, decreased landing speed, and, an augmented lift coefficient. The invention permits safe take-off and landing by high speed aircraft on short runways such as battleship decks, aircraft carriers, and small airfields without using added appurtenances, increasing the wing area, decreasing the maximum speed, or jeopardizing the stability factor.

The Henter et al. patent, No. 1,868,832, provides for "a depression on the upper side of a sustaining wing which depression ends into a circularly depressed trailing edge before the corresponding air screw, thereby shielding the air screw against the air flowing on the lower side of the wing." There is also in that patent provision for "slots arranged in the surface on the upper side of the aerofoil, said slots being connected by ducts with said depressions," such that "air from the upper side of the aerofoil flows through said slots and ducts to said airscrews."

The results obtained by Henter et al., as stated substantially in the language of the patent specification, are:

"1. The suction induced by the air screws affects a larger portion of the upper wing surface than with the air screw above a straight, undepressed trailing edge. The new kinetic energy induced upon the boundary layer prevents this layer from setting up a reverse flow.

"2. The arrangement of the depressions with their corresponding air screws behind enables also suction of air through slots and ducts from such points on the upper side of the aerofoil, where the flow is liable to break away. Such air is then discharged rearwards by the air screws and the reverse flow of the boundary layer near the slot or opening inlets cannot occur.

"3. A controllable flap is provided behind the air screws that is capable of directing the discharge flow of the air screws as well as the wing downwards to obtain temporarily a high lift coefficient, for instance for landing."

The Henter patent, 2,194,596, merely incorporates the disclosure of Henter et al. in various aircraft types.

The Stipa domestic patent provides for a tube mounted in a fuselage, and a propeller positioned in front of, or within, the tube, but in any case limited by "at least a part of said tube being situated behind said propeller." The propeller and tube cooperate to secure a Venturi effect, transforming the dynamic pressure into static pressure in the diverging portion of the tube, the reaction thereby increasing the propelling action of the screw. Openings are provided in the upper surface of the fuselage or wing leading into the tube. The effects secured by the invention are a decrease in the resistance of the air to the flight, and an increase in the lifting power of the aircraft.

The French patent to Stipa is an adaptation of the earlier Stipa patent, described in the preceding paragraph, the essential difference consisting in situating a Venturi tube on each side of the fuselage rather than a single tube in the fuselage as heretofore. Both Stipa references disclose movable flaps at the rear of each channel, and ailerons at the wing tips.

In rejecting claim 5 as aggregative and lacking clarity, the examiner stated that the claim revealed no cooperative or useful relation between the propellers and the channel wings. The claim, he held, does not limit the relationship of propeller and channel wing to one of alignment, but would admit of a relation where the propeller was below the wing, out of alignment with the channel area. The board agreed with that finding.

In meeting that finding, appellant's counsel refers to the statements in the claim that the channel opens upwardly and extends from the front to the rear edges of the wing, and that the propellers are carried by the fuselage and positioned to operate adjacent the aft ends of the wing channels. He then says that "This art has been extant for more than 75 years, during which time many patents have been granted, including the combination of wings and propellers. In all instances the proximity of the propellers to the wings is such as to, in theory at least, effect an operative structure." We scarcely think counsel intends to admit the combination of channel wing and aligned propeller for which he is seeking a patent is old to the art. He further interprets the examiner and board as referring to the distance between the disc of rotation of the propeller and the rear surface of the channel wing, whereas the examiner and board are actually referring to the alignment of the lower half of the disc of rotation of the propeller with the arc-like configuration of the rear edge of the channel wing so that the vital effect of the invention; viz., inducing a flow of air through the channel, is secured.

Since the alignment of the propeller disc and wing concavity is fundamental in producing the result which would make appellant's combination patentable over aircraft structures known to the art, his failure specifically to set out the relationship of alignment in claim 5 is fatal to the claim. The use of "adjacent" in the claim as the limiting word describing the relation of propeller to wing channel would allow a relation where the propeller would be beside the channel laterally, or at a variety of positions other than the one essential position of alignment with the channel. We agree with the examiner and the board that claim 5 lacks the requisite clarity to identify and limit the combination to that propeller-wing channel relationship which is the basis of its patentability. The appellant's claim is too broad because it fails clearly to state this essential element. In re Burnelli, 38 F.2d 891, 17 C.C.P.A., Patents, 918. Nor are we able to limit the normal

meaning of "adjacent" by reference to the specification and drawing of appellant's application, for it is well understood that applicants for patents may not have read into their claims limitations not expressed therein although emphasized in their application. Martin v. Chapman and Little-ford, 71 F.2d 174, 21 C.C.P.A., Patents, 1187. This court likewise will not reverse a decision of the board by reading into a claim a limitation not expressed in the claim and not considered by the board. In re Freeman, 168 F.2d 81, 35 C.C.P.A., Patents, 1127.

Since claim 5 is indefinite in describing the essential relation which gives the appellant's aircraft patentability over the prior art, it likewise fails to describe a combination, and the elements which are recited, being shorn of the limitation vital to their patentability as a combination, merely recite an aggregation. It is therefore unnecessary to consider the additional ground of rejection cited below; viz., lack of patentability over the prior art, as the claim is fatally defective on the grounds hereinbefore considered.

Claim 6 was rejected by the examiner as lacking invention over each of Henter and Henter et al. The board held that the provision for a channel of constant depth from front to rear does not sufficiently distinguish the claim from the references, and adds that the provision would admit of a very shallow concavity since the word "channel" contains no size limitations. The board states that "channel wing" would embrace early well-known aircraft which used corrugated wing surfaces. As to this appellant's claim refers to "channel wing" and the specification and drawings support the presumption that what is meant here is a wing structure of a single channel-like configuration. This would not embrace a wing whose surface contained many small corrugations or channels.

The combination of the terms, however, fails adequately to cure the latent defect of limiting the channel to some order of dimension. Patently, the channel could not be of just any size and still obtain the novel and unusual results of the appellant's invention. Claim 6 supplies no limit-ing criteria which will assist in limiting the claim to the order of dimension required to secure the results of the invention. Obviously, "means for creating low pressure areas in the wing concavities whereby static lift is effected" is a functional description which, when coupled to the broad and indefinite antecedent description fails to distinguish the combination in a patentable way. Without limiting data within the claim, it could easily cover "depressions" in the wing as set forth in the Henter et al. patent. We agree with the examiner and the board that claim 6 does not sufficiently distinguish appellant's invention from the Henter and Henter et al. references. Furthermore, the claim is too broad, fails to set out important limitations as to dimension, and on this basis is likewise defective. In re Burnelli, supra.

Appellant strenuously opposes the rejection of claim 6 on the ground set out by the examiner and the board. He refers to the board's decision qualifying its action on claims 17 and 18 of the application to permit allowance if and when amended to state "the depth of the channels is substantially constant from the front edge to the rear edge of the wing," and insists that since this limitation first appeared in claim 6, its application to claims 17 and 18 *alone* had the vital effect of curing otherwise unacceptable claims. We cannot agree. Claims 17 and 18, as amended, read as follows (amending clause italicized):

"17. An aeroplane including a fuselage equipped with a wing on each side of the fuselage, each of the wings being provided with an upwardly opening channel, the channel extending from the front to the rear edge of the wing, *the depth of each channel being substantially constant from the fore to the aft edge of the wing* a propeller mounted on said aeroplane, the plane of rotation of the propeller disc being substantially in the transverse plane defined by the rear edge of the channel, the rear edge of the channel substantially coinciding with the lower half of the periphery of the propeller disc.

"18. An aircraft having a lifting surface, said lifting surface being provided with an upwardly opening channel, the

channel extending from the front to the rear edge of the surface, *the depth of each channel being substantially constant from the fore to the aft edge of the wing* a propeller mounted on said surface, the plane of rotation of the propeller disc being substantially in the transverse plane defined by the rear edge of the channel, the rear edge of the channel generally coinciding with the lower half of the periphery of the propeller disc."

It will be seen that claims 17 and 18 describe in detail the invention, including the essential aspect of the coincidence of the disc of rotation of the propeller and the configuration of the channel in the plane defined by the rear edge of the channel. Claims 17 and 18, then, possess the data requisite to identify the essential relationship of alignment of the channel concavity with the propeller disc. The terminology of claim 6 is fatal in failing to include such criteria. For these reasons we agree with the tribunals below that claim 6 is not allowable.

Claim 7 was rejected by the examiner because it fails to specify any cooperative relationship between the "landing control means" and "means for creating low air pressure areas in the wing concavities." For this reason the examiner considered the claim aggregative. The board agreed with the position of the examiner, adding the explanation that as "directional controls," the "ailerons" would presumably be normally operative under "dead propeller" conditions as well as otherwise, so long as the air speed was sufficient for maneuverability. The appellant contends that the board is in error, specifically, in overlooking the following statements in the record:

"With the present invention, instead of cutting off the engine for landing, the full horsepower is utilized, the propeller, during this period, producing lift at the expense of forward motion.

\* \* \* \* \* \*

"Consequently the engine, instead of being employed only for the take off and propulsion in flight, is likewise used to the extent of its horsepower for landing."

Counsel then contends that in view of those statements there is a "clear interdependence of function" between the "landing control means" and the "means for creating low air pressure areas in the wing concavities."

The full scope of claim 7 must be considered, however, and we find it defective for the reasons set out for claim 6. The combination of terms used fails to supply any reference for limiting the channel wing in the order of dimension in its concave portions. As we have pointed out above, such inadequacy is fatal. The claim with this defect present fails to set forth any patentable cooperative relationship, as stated by the examiner, and recites merely an aggregation. Moreover, the claim because of such defect fails to distinguish appellant's invention in a patentable way over the Henter and Stipa references all of which provide for controls which operate within and without the area of channel-like depressions.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.