## Application of MOORE.
### Patent Appeals No. 5670.

United States Court of Customs and
Patent Appeals.

May 9, 1950.

James E. Curtiss, New York City (J. Harold Kilcoyne, Washington, D.C., and Henry J. Savage, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D.C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner, finally rejecting all of the claims 3, 7, 10, 14, 15 and 17 of an application, serial No. 508,706, filed November 14, 1943, alleging new and useful Improvements in Packages. The claims were rejected as lacking invention over the prior art and claims 3, 10 and 14 were further rejected on the ground of aggregation.

The prior art relied upon by the Patent Office is: Krotoschin (Br.) 232,860 April 30, 1925; Herz 2,097,858 Nov. 2, 1937; Spaulding 2,196,085 April 2, 1940; Sherwood 2,246,818 June 24, 1941.

Claims 3 and 14 properly appear in the decision of the board as illustrative of the involved subject matter and read as follows:

"3. A package comprising a rectangular tray closed at its two ends and having one side open for filling, the inside of the tray being coated with a moisture vapor and grease resistant coating, a moisture vapor and grease resistant wrapper enclosing said tray and sealed about the same, a sleeve having four fixed sides within which said wrapped tray has a sliding fit, and means for releasably securing the tray within the sleeve.

"14. A package comprising a rectangular tray closed at its two ends and having an open side for filling, a resilient lip at each end of the tray extending inwardly over the open side and tending to raise outwardly therefrom, the inside of said tray and lips being coated with a moisture vapor and grease resistant coating, a moisture vapor and grease resistant wrapper enclosing said tray and sealed against the ends and one side thereof, a sleeve within which said wrapped tray has a sliding fit, the resilience of the lips tending to a close contact of the wrapper with the sleeve at each end, and means for releasably securing the tray within the sleeve."

The application relates to the construction of packages designed to carry perish-

able foods, such as bakery products. The device defined in the involved claims comprises an inner box-like form, called a tray, one side of which is open for the reception of the commodity to be packed. The tray is designed so that it slidably and closely fits within an outer casing or sleeve, which is part of the package. The tray is coated on its inner walls with a moisture and grease resistant coating, which is stated in the application to be a lacquer, such as nitro-cellulose or ethyl-cellulose. The upper edges of the ends of the tray comprise flaps, called "resilient lips," extending inwardly over the open side and tending to raise outwardly therefrom. After the inner box or tray has been filled, it is closed in a sealed wrapper of moisture and grease resistant material. At spaced points on the wrapper, above the flap portions, are adhesive spots designed to releasably seal the tray within the sleeve.

The Krotoschin patent relates to "Inspection Packages for Fragile or Sensitive Articles." As may be noted from the title, the patent relates to the forming of a box in which pralines, cakes, confectionary and similar fragile or sensitive articles are packed. The purpose of the package is to keep its contents in an air-tight and dust-tight manner and at the same time expose the contents for inspection without them being touched. The package comprises a hollow body or box, open at one side, and covered by transparent paper or the like, which is adhesively sealed opposite the open side of the box. A second cover is provided which fits closely around the inner box and its covering, allowing the open side of the inner box to be exposed in order to exhibit the contents. Three different forms of the package are shown. One form, as shown in the drawings, depicts blanks from which the inner and outer boxes are folded into shape. In that form of box there is a lid which is adhesively attached to the outer box and which may be lifted so that the contents of the package may be viewed through the transparent covering of the interior box. The inner box is provided at its ends with flaps that extend inwardly of the open side. The second box form is quite similar to the

form of the first box, the only substantial difference being that the lid of the second form is so constructed that it is, in effect, an oval window. The third form of the package is shown to be an inner box designed to slide into an open ended outer box. It is stated in the specification that the inner box is constructed in substantially the same fashion as the inner boxes of the other two constructional forms, except that, instead of providing for the two end flaps, there is provided a continuous marginal border which runs all around the top of the inner box. That box is covered adhesively by a transparent paper or the like, just as are the other two forms of inner boxes.

The Herz patent relates to a container designed for holding, protecting and dispensing a package of folded sheets of tissue or other kinds of paper, so arranged that the removal of one sheet exposes the edge of the next sheet below it. The sides of the container are provided with openings, covered with transparent material so that the contents are visible. The patent was cited, seemingly, for the disclosure of the use of spots of adhesive designed for temporary securement of the container parts.

The Spaulding patent is concerned with tubular paper manufactures. The paper tube is so designed as to be resistant to capillary penetration of oil contained therein. The outer surface of the container is provided with a wax coating and the inner surface thereof with an oil-resistant coating.

The Sherwood patent relates to a package for food products, particularly for those which might exude grease, such as lard, doughnuts, fried cakes or the like. The purpose of the inventor was to provide a container so that its outside would not become unsightly by reason of the penetration of grease through the walls of the container.

The Primary Examiner rejected claims 3, 10 and 14 as unpatentable over the Krotoschin reference. In making that rejection he relied upon the third constructional form of the patent, hereinbefore mentioned, pointing out that the device

shown in that construction discloses an outer open-ended sleeve member having four fixed sides into which the wrapped tray is slid. The examiner was of opinion that the friction between the outer and inner members of the device would, broadly speaking, be sufficient to meet the limitation in the claims, "means for releasably securing the tray within the sleeve." He further stated that the use of an elastic band, string or other protecting means for keeping the tray within the outer covering, would satisfy the terms of the retaining means, as broadly defined in the claims, and on that premise properly stated that it would not amount to an inventive addition to the device.

The examiner seemed to concede that the total result from the use of a grease and moisture resisting coating would be to provide greater protection for the contents of appellant's container than would other containers. However, he held that such use, together with the physical characteristics of the tray, wrapper and sleeve formation, was nothing more than the summation of the results of the aggregated features, stating it would be obvious that the coating would be effective to protect the contents of the package irrespective of the specific form of the wrapped inner tray or container and enclosing member and the specific means for securing the inner member within the outer member. He, therefore, further rejected those claims as being aggregative. In addition, he stated that grease and waterproof coating were commercially known, as shown in the Spaulding or Sherwood patents, and that it would not amount to invention, if desirable, to employ such coating in the device of Krotoschin for packing certain contents.

Claims 7, 15 and 17 were rejected by the examiner as unpatentable over the Krotoschin patent in view of the patent to Herz. The examiner held that the use of adhesive spots, shown in the latter patent, would make it obvious to thus secure the tray of the Krotoschin device.

The application contains several other claims which were rejected as not readable on the elected species to which the involved claims are directed.

The board affirmed all of the reasons for rejection given by the examiner.

In a further decision, the board denied a petition for reconsideration by counsel for appellant.

We note that in the petition for reconsideration, counsel for appellant contended that a problem existed in the art of packaging products, such as those of a bakery, which was solved by appellant, and that such solution involved invention. Among other things it was argued that the package of appellant is so constructed that it can be filled by automatic machinery and be strong enough to prevent unnecessary breakage of the contents thereof, and that as constructed and used it resulted in an increase in shelf life and preservation of the contents for a much longer period than packages used for the same purpose before appellant's device was made. It is also stated in the application that the packages are designed for being filled by automatic machinery. Neither tribunal of the Patent Office made any reference to the suitability of the container of appellant for automatic filling, and of course there is nothing in the involved claims to warrant any such reference. Counsel pointed out that the package of appellant must be inexpensive for the reason that it is intended for the carrying of bakery products. They admitted that, as a skilled expert in the packaging art, appellant naturally drew upon the knowledge possessed by him in that industry, and of course was presumed to be acquainted with the teachings of the prior art.

It is stated that the "Peters type" carton is the kind shown in the Sherwood patent, and that it was the best carton for bakery products known to the industry prior to appellant's device, although it had several undesirable features. Those features were stated to be that it did not lend itself to automatic packaging; that it required liner material in excess of the amount needed in order to line the carton so that it could be folded over upon itself to effect a closure of the top of the car-

ton, but that such closure was not a true seal; that since a true seal could not be effected with the Peters carton, it was necessary in that device to provide a cover therefor with a flap to be tucked in between the liner and the carton wall or to overlap the wall and be secured by adhesive; that the device of the Peters carton also required end flaps of substantial length to be folded over the contents. All of those defects above noted, according to counsel for appellant, added to the cost of the container, but left much to be desired with respect to efficiency.

The problem adverted to by appellant's counsel is said to have been solved by the provision of the grease resistant and moisture proof lacquered surface on the inside of the inner carton. The application of such lacquer resulted in a one piece grease resistant and moisture proof tray, readily adaptable for use in automatic packaging machinery. Appellant completely sealed the coated tray and its contents with a grease resistant and moisture proof wrapper, said to be readily sealable by means of heat during the packaging operation. The final step in the claimed solution of the problem was to strengthen the carton and protect its contents, which appellant did by providing a sleeve of inexpensive material into which the sealed and wrapped tray would be slid, and the temporary displacement of the tray was prevented by spot gluing.

Prior to the final rejection by the examiner, three affidavits were filed describing comparative tests of identical bakery goods in Peters type packages and in packages, as defined by the involved claims. The affidavits disclose that over periods of time extending from 30 days to nine months, while the packages were subjected to the same atmospheric conditions, the contents of appellant's packages invariably remained crisp and fresh, while those that were packed in the Peters carton deteriorated, even to the point of rancidity in a comparatively short period of time.

Neither of the tribunals of the Patent Office made any reference to the affidavits, unless the statement by the Primary Examiner, which was quoted by the board in its decision—that appellant's packages provided greater protection for the contents thereof than packages of the prior art—may be considered as indicating that the affidavits had received attention.

The involved claims were rejected primarily on the Krotoschin patent, the other patents being merely cited to show that it was old in the art to employ a vapor and grease resistant coating of any desired character in connection with a container. While it is stated in the Spaulding patent that the coating thereon is oil resistant, the board held that it was obviously moisture vapor resistant. The Sherwood patent was cited only for the purpose of showing a package for food products with a paraffin wax outer coating, and the Herz patent only as disclosing the use of adhesive spots. Therefore, as far as rejection on the prior art is concerned, if the Krotoschin patent is not appropriate as a reference, the secondary references need not be considered.

Throughout the prosecution of the application in the Patent Office and here, the propriety of the Krotoschin patent as a reference has been challenged. The examiner in his statement and the board in its original decision relied upon the third construction disclosed in the Krotoschin patent.

Counsel for appellant concede that the device of the Krotoschin patent discloses a paper wrapped tray enclosed within an open sleeve. They interpret the drawings depicting the third structure of that patent as comprising an inner box made of cheap cardboard with a continuous marginal border of frame-like form cut from a separate sheet of material and laid loosely on the top of the inner box within the walls thereof without being attached to any element of the package.

The board in its decision on appellant's petition for reconsideration discussed the interpretation therein of the Krotoschin structure and expressed its disagreement with appellant's interpretation with respect to the marginal border and quoted from the specification of the patent as follows: "The inner box or frame body b (Figures 7 and 8) is constructed in substantially th»

same manner as in the case of the constructional forms previously described, with the difference that instead of two marginal borders 21 limited to the ends a continuous marginal border 21 ª is here provided, running all round the inner box."

The board then referred to Fig. 3 of the Krotoschin patent which shows two marginal borders on the ends of the inner box as an integral part of the blank from which the inner box is formed. In addition it referred to Fig. 6 and stated that in that figure a continuous marginal border is an integral part of the blank of a modified form of the inner box. It then concluded that the continuous marginal border of the latter figure is also an integral part of the blank forming a modified form of the inner box. The board was of opinion that the marginal border and its scalloped edges would cause a close contact of the wrapper with the sleeve. Other contentions were made by counsel in their petition for reconsideration which are not necessary to discuss here.

A very careful consideration of the drawings in the Krotoschin patent convinces us that the interpretation placed by counsel for appellant upon the third construction is correct. We do not believe that the quotation by the board from the specification of the patent justifies its conclusion. While it is true that, as far as the general construction of the inner box by itself is concerned, it is done in substantially, but not in exactly, the same fashion in the third form as in the other two forms. There is nothing in that quotation to indicate that the difference between the form having a continuous marginal border instead of the two end flaps of the other forms is such that it can reasonably be said that all of the inner boxes have substantially the same construction. The frame-like marginal form appears to be a continuous structure. There is nothing in the drawing or the specification to give the slightest indication that it is anything but one continuous piece. There are no indications of seaming or cutting or folding, such as would, in our opinion, surely be shown if the form were anything but as contended for by counsel

for appellant. It appears to us to be quite similar to the paper margin that at times is used in candy boxes. Furthermore it appears to us, in accordance with the lines of the drawings, that the body of the inner box and the all around margin are two separate elements. The lines showing the juxtaposition of the margin and the box are separate, and in our opinion it would be mechanically impossible to construct the interior box of the third form in accordance with the reasoning of the tribunals below.

It appears to us that the inventive concept of the patentee was directed entirely to providing a transparently wrapped arrangement in a carton wherein the contents could be viewed without breaking the wrapper. We see nothing further in the patent which we can consider to be an anticipation of the structure of appellant's application. Neither do we believe that any of the references, taken alone or considered together, would make it obvious to one skilled in the art to construct the package described in the involved claims.

For the reasons hereinbefore set out, we are convinced that the involved claims should not have been rejected upon the prior art.

 We are of opinion that the claims are not properly rejectable on the ground of aggregation. While it is true that the elements of the claims are not new, nevertheless we think they patentably cooperate, each one with the others, in producing a new and beneficial result. Certainly the coating of appellant, the wrapper, the tray and the sleeve could each be used in other combinations, but those elements may properly be joined, as appellant employs them, in a new combination which produces a particularly novel type of package, which in our opinion is patentable. Clearly the combination of appellant, as far as this record is concerned, had not been made in the prior art, and of course was not available to the packaging industry. That appellant has clearly made a great advance in an already crowded art may not properly be ignored. A new combination of old elements cooperating in a new, useful and unobvious manner to pro-

duce an improved result is patentable. Williams Manufacturing Co. v. United Shoe Machinery Corp., 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537; Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177; In re Holt, 162 F.2d 472, 34 C.C.P.A., Patents, 1129; In re Emmey, 161 F.2d 754, 34 C.C.P.A., Patents, 1097; In re DeLancey, 159 F.2d 737, 34 C.C.P.A., Patents, 849; In re Bencker, 96 F.2d 326, 25 C.C.P.A., Patents, 1097; In re Hofmann, 95 F.2d 257, 25 C.C.P.A., Patents, 975.

The decision of the Board of Appeals is reversed.

Reversed.