38 C.C.P.A.(Patents)

### Application of NEWTON.
### Patent Appeals No. 5731.

United States Court of Customs
and Patent Appeals.

Feb. 12, 1951.

O'Connell, J., dissented in part.

Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich. (John M. Kisselle, Robert A. Choate, Detroit, Mich., Francis D. Thomas and Stephen W. Blore, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges.

GARRETT, Chief Judge.

By this appeal appellant brings before us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner, hereinafter referred to as the examiner, rejecting all the claims, numbered respectively 1, 2, 3, 4, and 9, of appellant's application for patent relating to a drawing frame assembly used in the textile industry—"particularly," according to the specification, "to the drafting of cotton [for producing thread] in which a clearer of a revolving type is used in connection with upper drafting rolls which cooperate with a clearer in a novel manner."

It appears that in the manufacture of the cotton threads which eventually are woven into cloth, the raw cotton is carded and combed, being thus formed into slivers and rovings which by being drawn out are spun into threads. The application here relates to the "drawing out" mechanism, and we quote the following from the specification: "In the drawing of the cotton fibers two main problems have confronted textile machinery designers, the first being the provision of drawing rolls of such shape and surface characteristics that the sliver or roving would be attenuated a considerable amount but without pulling it apart; the second problem being the removal of the loose and short fibers from the roving, it being desirable to permanently remove all the loose and short fibers and at the same time keep the drawing rolls clean and further make it possible to easily remove the collected short fibers."

All the claims were rejected as lacking invention over the prior art cited and claims 1, 2, 3, and 9 were rejected additionally as being indefinite and broader than the invention. There is no distinction of a patentable nature between claims 1, 2, 3, and 9. They stand or fall together, and claim 3 is illustrative of the group. It and claim 4 read: "3. In a drawing frame assembly of the type having a revolving clearer cloth and, a pressure roll for driving said cloth by friction, said roll havng a driving surface formed of clear synthetic rubber like compound with a coefficient of friction such that all short fibers picked up by the roll will be felted onto the cloth and the pressure rolls kept clean.

"4. In a drawing frame assembly of the type having a revolving clearer cloth and, a pressure roll for driving said cloth by friction, said roll having a driving surface comprising butadiene-acrylic nitrile co-polymer with a coefficient of friction such that all short fibers picked up by the roll will be felted onto the cloth and the pressure rolls kept clean."

The following references were cited: Rockoff, 2,304,656, Dec. 8, 1942; Rockoff, 2,341,656, Feb. 15, 1944; Caemmerer (Br.), 153, of 1858; Ermen (Br.), 3,386, of 1873; Pieper (Br.), 4,491, of 1876; Caha (Austria), 120,692, Jan. 10, 1931.

It will be noted that all five of the claims are for a combination of a revolving clearer cloth and pressure rolls for driving the cloth, the rolls having driving surfaces made of a synthetic rubber like compound.

■ Just here seems a proper place to say that the distinction between claim 4 on the one hand and the group comprising claims 1 to 3 and 9 on the other hand is that in claim 4 the surface material is specifically defined as a "butadiene-acrylic nitrile co-polymer," which is described in the specification, while in the others the material is defined broadly as a "clear synthetic rubber like compound." The breadth of the latter definition constituted the second ground of rejection applied by the tribunals of the Patent Office. We are unable to find in the specification any subject matter sufficient to support claims of such breadth, and we, therefore, approve

the following taken from the decision of the board: "Claims 1 to 3 and 9 have been further rejected as indefinite and broader than the invention. The Examiner states that the term 'synthetic rubber-like compound' does not designate a well-defined class of materials. Furthermore, it appears from the Rockoff patent that synthetic rubbers as a class do not possess similar surface characteristics when used as a surface portion of drafting rolls. It seems apparent from Rockoff that not all materials that are recognized as synthetic rubbers would be operative to obtain the advantages asserted. The further statement in the claims to the effect that the synthetic rubber is to have a coefficient of friction such as to attain the results here sought, may not be relied on to define the subject matter. The rejection of claims 1 to 3 and 9 as indefinite and broader than the invention will accordingly be affirmed."

■ We do not agree, however, that it was proper to reject claim 4. It seems to us that appellant properly may be accredited with invention in combining into a new mechanism the elements taken from the prior art. The British patents cited here are very old, the last one having been issued in 1876. Some 55 years elapsed before the issuance of the Austrian patent and 65 years before the first patent to Rockoff. In this crowded field of an extremely important art no one during all those years seems to have thought of making what now appears to be a simple but valuable combination. Appellant did it and, if the affidavit of Mr. Rowe is to be believed, he made an important contribution to the art. We discern no reason for questioning his statements.

He seems to have had long experience with cotton mill work, having been associated with cotton mills since 1913 in the United States and in foreign countries. We quote from the affidavit the following: "That the device disclosed and claimed in the aforesaid application has distinct advantages in mill work since it permits reduction in work load on operators to the extent of at least 15 per cent, that is, the revolving clearers need not be attended by operators as frequently as the

old type of stationary clearer, and that the quality of the cotton yarns passing the clearer is much cleaner and freer from clearer waste than is produced by a stationary clearer; that the use of the revolving-type clearer with the synthetic rolls of the type disclosed in the Newton application Ser. No. 556,154 has cut the cleaning time for drawing 15 per cent due to the lack of packing and 'eyebrowing' as a direct result of the surface characteristics of the synthetic rolls; that while commercial drawing frame assemblies such as shown in Peiper, British #4491 of 1876, and Caemmerer, British #153 of 1858, produced good drafting of the cotton, they caused the formation of rat tails because of the coefficient of friction of the top rolls formed of leather, cork and the like, and thus did not produce clean slivers or roving; that this type of revolving clearer with synthetic top rolls has been widely adopted at the Dan River Mills and has substantially replaced so-called stationary clearers and Ermen type revolving clearers with a saving of approximately $70,-000.00 per year as compared with said replaced clearers."

In the opinion of Judge O'CONNELL, expressing concurrence in the allowance of claim 4, but dissenting as to the rejection of the other claims, there is given a more elaborate statement descriptive of appellant's application and of the prior art than is given in this opinion. Duplication is unnecessary and we refrain from further elaboration.

Our decision as to claim 4 is predicated upon the fact that appellant has produced a new device which is shown to have great utility, and which, in our opinion, displayed invention.

The decision of the Board of Appeals is modified. The rejection of claims 1, 2, 3, and 9 is affirmed and the rejection of claim 4 is reversed.

Modified.

O'CONNELL, Judge (concurring in part and dissenting in part).

I wholly concur in the decision of Chief Judge GARRETT with respect to the allowance of claim 4 but respectfully dissent from his disallowance of the remainder of the claims. The question of whose claims are patentable in a given case is always a matter of opinion. Even so, courts are not exempt from fallacy or error of judgment in deciding that question and from time to time have been required to reverse themselves in whole or in part on a petition for rehearing.[1]

A fertile source of error in the patent law is the misapplication of a sound legal principle established by a court of competent jurisdiction in one case to a subsequent situation in another case wherein the facts are essentially different and the principle has no application whatsoever. The Solicitor for the Patent Office has here cited for the first time and relies upon the case of In re Hughes,[2] of which no mention was made either in the decision of the Primary Examiner or the Board of Appeals, for the obvious reason that the facts of that case are essentially different from those recited in the case at bar.

Before discussing the references and claims on appeal, it should be further recalled that, while the disclosure of a party claiming a patentable invention must be such as to enable any person skilled in the art to practice the invention without the exercise of the faculty of invention, nevertheless it is not essential to describe in detail that which is obvious to any person skilled in the art;[3] that where skilled persons working in the art have failed after repeated attempts to discover a certain new and useful improvement, he who first makes the discovery is entitled to protection as an inventor, notwithstanding that the discovery seems simple and obvious;[4] and that the better and more efficient op-

1. In re Barnett, 155 F.2d 540, 33 C.C.P. A., Patents, 1119; Mershon v. Sprague Specialties Co., 1 Cir., 92 F.2d 313, 320.

2. In re Hughes, 152 F.2d 1019, 33 C.C.P. A., Patents, 810.

3. In re Beach, 152 F.2d 981, 33 C.C.P.A., Patents, 810.

4. Pyle Nat. Co. v. Lewin, 7 Cir., 92 F.2d 628.

eration of appellant's drawing frame assembly for which a claim has been allowed does not establish the invalidity of the patents to Rockoff.[5]

The claims were all rejected on the following prior art of record: Caemmerer (Br.), 153 of 1858; Ermen et al. (Br.), 3,386 of 1873; Pieper (Br.), 4,491 of 1876; Caha (Austria), 120,692, Jan. 10, 1931; Rockoff, 2,304,656, Dec. 8, 1942; Rockoff, 2,341,656, Feb. 15, 1944.

The British patent issued in 1858 to Caemmerer disclosed a spinning machine with revolving cleaning rollers covered with leather or other soft substances.

The British patent issued in 1873 to Ermen et al. disclosed an improvement in a drawing frame used for preparing cotton and other fibrous substances. The patentees provided apparatus for spinning frames by attaching one or more narrow strips of leather or other suitable material to an endless band of flannel used to collect the fibers from the top and bottom rollers. The invention was designed to prevent the lateral motion of the flannel band and to keep its edges from rubbing against the bearings and becoming saturated with oil.

The British patent granted in 1876 to Pieper related to an improved cylinder cleaning apparatus for spinning machines and was designed to completely dispense with the inconveniences derived from the removal of waste of cotton or wool in the operation of drawing frames. The specification stated that in such an operation: "The fibres are retained by the cloth and form accumulations of waste which must be taken off every half hour lest they should be taken along and run into the sliver. Either they are big enough to produce a breaking of the sliver, or when smaller they go with the sliver unobserved and produce an uneven thread. On the drawing frame they are the worse enemy of the spinner, where they are produced in greater quantity on account of the want of twist of the sliver. * * *"

The cleaning roller disclosed by Pieper had a hollow cylinder filled with small shot and provided with a hairy surface.

The disclosure of the Austrian patent to Caha, 1931, related to a cleaning cloth arrangement or roller mounting for drawing frames and is similar to the disclosure of each of the cited British patents. Caha's disclosure was cited by the examiner as showing floatingly mounted apron rollers similar to those specified in certain appealed claims. This patent was not mentioned or relied on by the Board of Appeals, however, and is not otherwise discussed in the brief for the Solicitor for the Patent Office.

Of the three British patents relied on by the United States Patent Office in the first group of references hereinbefore described, one was issued more than 90 years ago and the other two more than 70 years ago. They utilized the rotary type of cleaner. All of the references recognized that down through the years the unsolved problem with respect to a drawing frame assembly for drawing cotton fibers was the problem not only of getting rid of short and loose fibers, called "eye brows" or "rat tails," produced in bunches on the surface of the roving or cotton strand by the pressure rolls, but also to pack those fibers uniformly on a clearer cloth.

The second group of references relied on by the tribunals of the Patent Office were the two patents to Rockoff. They show the use of butadiene-acrylic nitrile copolymer as the surfacing material for rolls in textile machine units of the type known as stationary clearers. They teach, in other words, the use of a resilient cot composition, consisting of synthetic rubber having ingredients of good fiber drafting characteristics, for spinning and drawing rolls commonly used in a variety of textile machines and called for in particular by appellant's specification for use on the rolls employed with the revolving clearer cloth in the appellant's combination of his drawing frame assembly.

5. Monarch Marking System Co. v. Dennison Mfg. Co., 6 Cir., 92 F.2d 90.

Appellant's specification establishes further that the references relied on by the tribunals of the Patent Office comprise essentially the identical patents and elements thereof described in appellant's application as representing the old and previously existing art in order to facilitate the understanding of his improvement and what he claimed to be new.

There is no dispute that appellant's drawing frame is essentially of the type disclosed by the British patents to Caemmerer, Ermen et al., and Pieper; that is, a drawing frame which employs a revolving clearer cloth. Nor is there any dispute that appellant's claimed rolls are provided with the surface covering material disclosed in the patents to Rockoff. In fact, appellant's assignee frequently has utilized the Rockoff rolls in the claimed drawing frame assembly.

However, previous to appellant's discovery, the Rockoff rolls had been used exclusively with stationary clearers whereas the device claimed by appellant uses the Rockoff rolls in a drawing frame of the type having a revolving clearer cloth. What appellant has claimed is not merely a revolving clearer nor a rubber covered drawing roll in a drawing frame but a combination of the two; namely, a synthetic rubber covered roll with a revolving clearer cloth.

During the prosecution of his application before the examiner appellant submitted for the record pages 3–6 of the Saco-Lowell Bulletin of July 30, 1945, containing an article relative to the problem of the art hereinbefore described and appellant's solution thereof, together with an affidavit of Frank E. Rowe, Jr., similarly alleging facts relative to the problems previously prevailing in the art and describing the unexpected results and the wide commercial success connected with the use of appellant's device.

The evidence, considered in its entirety, discloses that stationary clearers in a drawing frame assembly were at first employed to contact and remove the difficult accumulations hereinbefore described but that in a large mill where thousands of clearers were utilized tremendous supervisory labor costs were caused by the necessity of lifting such clearers at frequent intervals for the purpose of cleaning them. As a consequence, the revolving type clearer was developed.

The revolving clearer required less supervision and maintenance than the stationary clearer but was not entirely successful because the revolving clearer surface would likewise cause the formation of the accumulations of fibers between the drawing rolls and the clearer cloth which would eventually ride over the drawing rolls and fall back into the roving. According to the uncontroverted and unchallenged statements of the Rowe affidavit, and, as stated in appellant's brief:

"One would normally expect that since the formation of 'rat tails' and 'eyebrows' continued to present a problem even when the Rockoff rolls were substituted for other types of rolls in stationary clearers, that much the same action would occur when the Rockoff rolls were used with a revolving type clearer cloth. Applicant found to his amazement, and to the amazement of the whole industry for that matter, that this was not the case. The use of Rockoff rolls with revolving clearer cloths eliminated this difficulty entirely. The importance of this unused coefficient of friction of the Rockoff rolls was first appreciated and first utilized by the applicant.

\*     \*     \*     \*     \*     \*

"The new results obtained with applicant's machine have been revolutionary when contrasted with the results obtainable with the machines of the prior art. The affidavit of Mr. Rowe clearly establishes that applicant's machines produce a far superior quality of cotton in much less time and effects a tremendous saving in the cost of supervisory labor. This saving, solely at the plant of applicant's assignee, amounts to approximately $70,000 per year. \*   \*   \* "

The unexpected results obtained by appellant's structure are substantiated by the article in the Saco-Lowell Bulletin which emphasizes that the advantages of appellant's machine are that it keeps the top

rolls exceedingly clean at all times, that the appellant's machine runs for 60 to 120 hours without attention from a supervisory operator, and that it prevents the waste matter picked up by the clearer from being returned to the moving strand of roving.

The tribunals of the Patent Office rejected all of the appealed claims as unpatentable over the disclosure of the prior art and further rejected all of the claims with the exception of claim 4 "as indefinite and broader than the invention" within the purview of section 4888 R.S., 35 U.S.C.A. § 33.

Notwithstanding the facts hereinbefore set forth, the Patent Office took the position that it was merely an obvious expedient to substitute the synthetic rubber rolls disclosed by Rockoff in a drawing frame assembly having the revolving clearer cloth disclosed by the British references. The board summarized its decision with respect to the prior art as follows: "At best the claims relate to the substitution of a particular synthetic rubber for other materials as the surfacing portion of a roll in an old machine. We think that Rockoff and particularly his patent No. 2,304,656, sufficiently suggests the use of the butadiene acrylic nitrile rubber for rolls of the character of those shown in the British patents. The facts suggested in the record do not, in our opinion, justify the allowance of the claims."

The tribunals of the Patent Office have not disputed nor challenged the fact that appellant's drawing frame was the first to utilize synthetic rubber covered rollers with a revolving clearer cloth and that the combination produces a new and useful result.

What they overlooked in rendering their decision was that the rule that the substitution of one material for another in constructing a known machine usually does not involve invention is subject to the exception here applicable. With respect to such questions the general rule was stated in the case of Hicks v. Kelsey, 18 Wall. 670, 673, 21 L.Ed. 852, wherein the Supreme Court stated: "The use of one material instead of another in constructing a known machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called an invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained. * * *"

The late Judge Lenroot in the case of In re Earle et al., 102 F.2d 232, 26 C.C.P.A., Patents, 974, quoted with approval the excerpt hereinbefore set forth and added other enlightening and controlling authorities on the point in issue. See also In re Moore, 181 F.2d 1014, 37 C.C.P.A., Patents, 1045. In re Merkle, 150 F.2d 445, 32 C.C.P.A., Patents, 1151.

Appellant in constructing the claimed apparatus has combined elements which in themselves are all old but he has combined them in a new way which not only was not taught or suggested by the prior art but which has also solved with unexpected results the difficult problems recognized in the art for generations. Under the authorities hereinbefore cited it is clear that the involved claims should not have been rejected on the prior art of record.

Appellant's position as to the patentability of his claims over the disclosure of the prior art should be sustained because of combination rather than the novelty of any particular element. With respect to the further rejection under R.S. § 4888 of claims 1–3, and 9 the Patent Office stated that the term "synthetic rubber like compound" employed in such claims does not designate the use of a well defined class of materials; that the disclosure of Rockoff shows synthetic rubbers as a class do not possess similar characteristics, and that in every instance the material would not be operative to obtain the advantages asserted when used as a surface portion of drafting rolls.

Section 4888 of the Revised Statutes [1]

---

1. Sec. 4888. R.S. Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description.

provides that in case of a machine, which includes a combination, the applicant for a patent "shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." See Halliburton Co. v. Walker, 329 U.S. 1, 9, 67 S.Ct. 6, 91 L.Ed 3; Corning et al. v. Burden, 15 How. 252, 267, 14 L.Ed. 683.

The Supreme Court in the case of Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U.S. 45, 65, 43 S.Ct. 322, 329, 67 L.Ed. 523, held that indefiniteness is objectionable because the application "does not disclose to the public how the discovery, if there is one, can be made useful, and how its infringement may be avoided."

The ultimate question of patentability in the case at bar is one of meeting the dual requirements of the statute not only with respect to the disclosure described in the specification but also with respect to the part, improvement, or combination which appellant claims as his invention or discovery. Graver Mfg. Co. v. Linde Co., 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672.

The Patent Office by its action hereinbefore described has correctly held, in effect, that appellant's invention or discovery is adequately disclosed in his specification and properly defined by his claim 4. Every claim for a patent must stand on its own feet, however, and appellant in order to meet the requirements of the statute with respect to definiteness clearly may not read into the remainder of the appealed claims limitations not expressed therein, although emphasized in the written description in the specification and in the drawings. In re Custer, 36 C.C.P.A., Patents, 927, 173 F.2d 226.

The statute requires that appellant in his claims has only to point out his invention, not that they redescribe it. Petersen v. Coast Cigarette Vendors, Inc., et al., 9 Cir., 131 F.2d 389, 391. In other words, the appealed claims may not be enlarged by resort to the description in the specification, but they may be thereby explained and illustrated. Continental Paper Bag Company v. Eastern Paper Bag Company, 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122.

Therefore, in the final analysis, the contested claims must be read and interpreted in the light of the specification and under the law they are by no means invalidated by the fact that a person skilled in the art, guided by the explanation in the specification, must exercise an election in the selection of the appropriate material for the rolls. Franc-Strohmenger & Cowan v. Arthur Siegman, Inc., 2 Cir., 27 F.2d 785; Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir., 139 F.2d 633; Safety Car Heating & Lighting Co. v. General Elec. Co., 2 Cir., 155 F.2d 937, 939; Dykema v. Liggett Drug Company, Inc., 33 U.S.P.Q. 427, 435, 436. Moreover, it is deemed proper to here recall that the description in the specification of an application for a patent is addressed primarily to persons skilled in the art to which the application appertains. F. E. Myers & Bro. Co. v. Goulds Pumps, Inc., D.C., 91 F.Supp. 475.

In arriving at a conclusion on the point under consideration the fact must again be noted that the claims in issue are directed to a new combination of old elements and not to a revolving clearer cloth nor to a known material of which one of

of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery * * *."

the elements of the old combination is constituted. Patent claims may be sustained because of the fact of combination rather than the novelty of any particular elements. Faulkner v. Gibbs, 338 U.S. 267, 268, 70 S.Ct. 25. Otherwise, if every claimed improvement had to be construed as embracing in a patentable sense all of the old elements as well as the new, thousands of patents for improvements in standard machines would be thereby nullified. Williams Co. v. United Shoe Mach. Corp., 316 U.S. 364, 369, 62 S.Ct. 1179, 86 L.Ed. 1537.

Synthetic rubber is widely known and understood as a material and the ingredients thereof consist of elements nowise a secret in the art. Facts relative thereto are readily available through competent publications. Moreover, the case at bar is not strictly one in the nature of the usual chemical case and every synthetic rubber would not have to work satisfactorily in order that the claims be valid.

In any event, each of the appealed claims calls for a synthetic rubber having a particular coefficient of friction defined therein as possessing the characteristics necessary to pick up the loose and short fibers and felt them evenly and uniformly against the rotating clearer cloth. Since it appears impossible to state what the coefficient amounts to in numerical values, it is believed the claims define the coefficient of friction in terms which are equivalent to the numerical values. Lever Bros. Co. v. Procter & Gamble Mfg. Co., supra.

Neither side in the case at bar has criticized the validity of the rule of law recognized and applied by the courts in the case or cases cited and relied on in this appeal by the other side. There is no apparent conflict in the respective groups of cited authorities. They disclose that courts have a different attitude in a given case depending upon whether the alleged invention has real merit which has substantially advanced the art or whether the claimed subject matter works only a slight step forward and the discovery is on the border line between mere mechanical change and real invention.

Claims for a very meritorious improvement in an old machine, which substantially advances the art, are entitled to a liberal construction, and the prompt and general adoption of the improvement, with increased productivity of the machines to which it was applied, is strong evidence of the patentability of his construction. Eibel Process Company v. Minnesota & Ontario Paper Company, supra. On the record presented, appellant's claims should not have been rejected on the ground that they were indefinite and broader than the disclosed invention.

For the reasons hereinbefore stated, the decision of the Board of Appeals should be completely reversed.