45 C.C.P.A.(Patents)

**APPLICATION of Ralph A. RUSCETTA
and Alfred L. Jenny.**

**Patent Appeal No. 6377.**

United States Court of Customs
and Patent Appeals.

May 29, 1958.

Gilbert P. Tarleton (Sidney Greenberg
and Oscar B. Waddell, Washington, D. C.,
of counsel), for appellants.

Clarence W. Moore, Washington, D. C.
(Arthur H. Behrens, Washington, D. C.,
of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and
O'CONNELL, WORLEY, and RICH,
Associate Judges.

RICH, Judge.

Ralph A. Ruscetta and Alfred L.
Jenny, have appealed from the decision
of the Patent Office Board of Appeals
affirming the examiner's rejection of
claims, 1, 2, 3, 19, 20, 21 and 22 of their
application entitled "Method of Etching
Capacitor Electrodes," serial No. 507,010,
filed May 9, 1955.

The central issue presented in this ap-
peal is a question of law involving the

legality of using appellants'[1] British complete patent specification No. 691,509, published May 13, 1953, as a basis for rejecting the appealed claims.

The references relied upon are:

Taylor 2,368,688 Feb. 6, 1945
British patent[2] 691,509 May 13, 1953

On August 29, 1950, appellants filed an original United States application, serial No. 181,998, entitled "Etched Capacitor Electrodes and Method of Etching." The invention related to etched tantalum electrodes for electrolytic capacitors and to the etching of tantalum by an apparently novel liquid solution.

On July 11, 1951, appellants filed a second United States application, serial No. 236,128, entitled "Method of Etching Capacitor Electrodes" as a continuation-in-part of the aforesaid original application. This second application was filed as a result of a Patent Office requirement of division. The original application became abandoned on February 7, 1953.

On May 13, 1953, the complete British specification No. 691,509 was published as a result of an application filed August 21, 1951, which specification is, except for the claims, substantially a copy of

appellants' aforesaid original United States application. It was, in fact, a conventional application based thereon.

On May 9, 1955, appellants filed a third application, serial No. 507,010, the one involved in this appeal, as a continuation-in-part of the second application. This third application added to the disclosure of tantalum the metals zirconium, titanium, niobium, and alloys of tantalum and niobium, on the basis of which generic and certain species claims were added to the case.[3]

The two continuation-in-part applications contained the cross-references to the earlier applications required by 35 U.S.C. 120 and there was also the necessary copendency to comply with that statute.

On July 21, 1955, the examiner issued a final rejection of claims 1–3 and 19–22 for "lack of invention over" the British specification, relying on In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244, as controlling. He allowed claims 4–18, which were directed to tantalum, the sole metal disclosed in the original application. On February 13, 1957, the Board of Appeals affirmed the examiner, also holding the Steenbock case to be controlling, and saying:

1. Appellants have referred to the British "patent" as being theirs, which is only loosely true. For the sake of accuracy, it is noted that appellants appear to have assigned their U. S. rights to General Electric Company whose attorneys have prosecuted the applications. The British reference bears the name of The British Thomson-Houston Company, Limited and does not name the inventors.

2. This reference is so designated though in fact it is not relied on as a patent nor shown by the record to be such under British law. What is relied on is actually the publication of the "Complete Specification" which took place on May 13, 1953, and we shall refer to it as the "British specification."

3. "Claims 1 and 19–22 read:
  "1. The method of electrolytically etching a refractory, film-forming metal selected from the group consisting of tantalum, zirconium, niobium, titanium, and alloys of tantalum and niobium, which

comprises making the metal the anode in an electrolyte solution consisting essentially of from 6.5 to 99% by weight of methanol, from about 87 to 0% by weight of an organic liquid miscible with methanol and from 3000 to 135,000 ppm. of water, and at least one methanol-soluble inorganic salt dissolved therein producing a solution having a conductivity capable of passing a current therethrough and being incapable of producing a film on the metal when current is passed through the electrolyte solution, said organic liquid forming with said methanol and water a combined solvent for said inorganic salt.
  "19. The method of claim 1, wherein the metal is zirconium.
  "20. The method of claim 1, wherein the metal is niobium.
  "21. The method of claim 1, wherein the metal is titanium.
  "22. The method of claim 1, wherein the metal is an alloy of tantalum and niobium."

"Appellants do not show possession of the invention described in the claims on appeal with respect to zirconium, niobium or titanium at a time prior to the patenting date of the British patent."

Of course, we do not know anything about the patenting date, if any, of the British specification and the board was no doubt referring to its publication date. We shall make that assumption. However, we do not understand the examiner's rejection to have been predicated on appellants' failure to have been in possession of the invention of the appealed claims *before the publication of the British specification.* What the examiner said in his final rejection was, "The reference is a statutory bar to any subject matter not disclosed in the parent case." And, in a letter to the Patent Office subsequent thereto, the applicants' attorney summed up the situation thus:

"At the interview the final rejection of claims 1–3 and 19–22 on applicants' British patent was clarified by the Examiner at the request of applicants' attorney. The Examiner stated that the British patent was being *used as a printed publication* which, being *published more than one year before the filing of the present application,* constituted (as the Examiner holds) a statutory bar against the rejected claims." (Emphasis ours.)

In the Examiner's Answer on appeal to the board he concisely restated his position as follows:

"The publication date of the British patent is *more than one year prior to the filing date of the instant application, and is therefore a statutory bar under 35 U.S.C. § 102(b),* unless applicants are here entitled to the filing date of one of their parent co-pending applications." (Emphasis ours.)

Appellants have been given the benefit of the filing date of their parent application as to what it discloses, and of course they are "entitled" to it to that extent,

and the method claims 4–18 specific to the etching of tantalum stand allowed. The claims on appeal, however, being either specific to metals first disclosed in the application of May 9, 1955, or generic to those metals and tantalum, find no support in the earlier applications and it is for this reason that the British specification is cited against them. Appellants do not contend that the applications prior to the one involved here contain any *support for claims* to the added metals, whether specific or generic, but rely on them here only as a means of *getting rid of the British reference altogether.*

Appellants tell us that they "base their main argument on the case of In re Stempel, 1957, 241 F.2d 755, 44 C.C.P.A., Patents, 820, decided by the Court subsequent to the Board of Appeals decision appealed from in this case." In view of the nature of the argument which has been erected on certain passages in the Stempel opinion, we deem it advisable to reiterate the warnings given in the past by Judge Hatfield in Conover v. Downs, 35 F.2d 59, 17 C.C.P.A., Patents, 587, 592, and Judge O'Connell in In re Newton, 187 F.2d 337, 38 C.C.P.A., Patents, 877, 880, that undue liberties should not be taken with court decisions, which should be construed in accordance with the precise issue before the court, and that a fertile source of error in patent law is the misapplication of a sound legal principle established in one case to another case in which the facts are essentially different and the principle has no application whatsoever.

As we have indicated, the situation here involves a one year statutory bar under 35 U.S.C. § 102(b). The claims on appeal were first supported by and made in an application filed May 9, 1955 and the British specification had been published nearly two years before on May 13, 1953, fully disclosing the invention as applied to tantalum, a species within the generic claims. As reiterated in the Steenbock case, it is axiomatic that the disclosure of a species in a reference is sufficient to prevent a later appli-

cant from obtaining generic claims, unless the reference can be overcome, and so the British specification disclosing the species tantalum, published over a year before appellants filed their generic disclosure is clearly a statutory bar to the granting of the generic claims.

Furthermore the present case is an exact parallel to the situation in the Steenbock case. The application there involved disclosed and claimed the irradiation of fungus material broadly. It was filed May 14, 1932 [4] as a continuation-in-part of an application filed December 27, 1926, which did not disclose the broad genus "fungus material," but only a specific fungus, yeast. The references were two publications of 1925 and 1927 and Steenbock's own British specification published November 12, 1926. Steenbock was allowed his specific yeast claims, supported by his parent application, because there was no two year statutory bar against them (the law then allowed two years) and he was able to swear back of the references and show prior invention. But as to the broad fungus material claims, all three references were held to be statutory bars as two year publications by the Board of Appeals. While appellants argue strenuously that this court did not affirm that rejection but affirmed on another ground allegedly applied by the board to the effect "that the fungus claims were broader than and unsupported by a disclosure of the single yeast species," there was no such other ground of rejection. It is all of a piece. The board's finding was that because of the lack of supporting disclosure for broad fungus claims *in the parent applications,* Steenbock had to rely on his 1932 filing date and therefore the references were two year statutory bars as to it; and this court, after restating the board's rejection as having been "for the reason that each of the references * * * was published more than two years prior to the filing of the involved application," affirmed that rejection. The Steenbock case is therefore directly in point and

clear authority for the rejection of the broad claims herein.

We come now to the Stempel case, on which appellants "base their main argument." They say in their brief, "the Steenbock case was disposed of by this Court in the Stempel case except as to its statutory bar aspect which was not involved in the Stempel case, but about which there seems to be some confusion."

The only disposition we made of the Steenbock opinion in the Stempel case was to say that it had nothing much to do with the Stempel issues, which were concerned with swearing back of a reference where there was no one year statutory bar, whereas Steenbock was decided on the basis of a statutory bar. Similarly we can now say the converse, that the Stempel case has no bearing on the present issues which are concerned with a statutory bar in the British publication.

Appellants indulge in some ingenious but specious reasoning based on the Stempel case. They point out that there the reference *sworn back of* disclosed only a single species and that we held that when that species was antedated by a Rule 131, 35 U.S.C.Appendix, affidavit, the reference was disposed of. They then say that here the British specification discloses but one species, that their United States parent application antedates it as to all it discloses and therefore it is disposed of as a reference. The two situations, however, are not thus comparable.

■ There is one fundamental which appellants consistently overlook, namely that what they are here claiming was first disclosed and claimed by them in their third application and that they are entitled to no date, *as to this subject matter,* earlier than May 9, 1955 when that application was filed. Copendency with earlier filed applications disclosing different subject matter, viz. the tantalum species of the invention only,

---

4. The opinion does not disclose this date and we have obtained it from the record on file in this court.

avails them nothing on the appealed claims. It is of significance only as to the tantalum species. Antedating the reference as to this species does not remove it from the category of a printed publication, published in 1953. As such it is quite unlike the reference in the Stempel case. There, if the Amos patent had been issued more than a year before Stempel's filing date, he could not have sworn back of it. Rule 131 in terms would have prohibited it and, even though he could have established *priority*, the Amos patent would have stood as a statutory bar to his claim. It is precisely in this way that the British specification stands as a bar to the claims of the appellants.

A fair and careful reading of the Stempel opinion will show that we were careful to point out several times that our decision had no bearing on a situation in which a reference was a "statutory bar" in the sense of having issued more than one year prior to the applicant's actual effective United States filing date.[5] There is such a bar here.

The principle applicable in this case did not originate in In re Steenbock and is not dependent thereon but is statutory in its origin and a rule of general application. It was applied by the Supreme Court under slightly different circumstances in Muncie Gear Works, Inc. v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171. There a certain device had been put on sale and had gone into public use after the filing of the patent application but the claims to that device were not made in the application, until they were inserted by amendment two years after such public use, by reason of which they were held invalid. The pendency of the application prior to the commencement of the statutory bar was of no avail.

In the Muncie Gear Works case the court predicated its decision on that part of R.S. 4886 which is now codified in section 102(b) dealing with events which constitute bars to a patent if they occur more than a year before the applicant's effective filing date in the United States. A filing date, to be effective, must be that of an application which *supports the claims*. Appellants' earlier applications fail them in this respect. Of course, it is of no moment whether the bar of a patent, printed publication, public use or sale results from the acts of the applicant or of others, so the circumstance that the British specification was applicants' own cannot be taken into account.

There remains for consideration the species claims 19–22, directed to the method as applied to the metals or alloys other than tantalum. The principal argument as to these claims is that the British specification is not usable as a reference but we have held otherwise. It disclosed the tantalum species of the method. The examiner combined therewith the Taylor patent 2,368,688 and said in his rejection, "As stated in Taylor, Zr, Nb and Ti are known equivalents of Ta." He said also that Taylor was cited merely to verify "the previous statement of common knowledge as to the equivalency of the several metals." The board affirmed this rejection without discussion.

5. See, for example, the following excerpts from the Stempel opinion.

"In the case of a reference, it is fundamental that it is valid only for what it discloses and if the applicant establishes *priority* with respect to that disclosure, *and there is no statutory bar*, it is of no effect at all.

"What is a 'reference'? It is nothing more than a patent or publication cited to show that all or part of the invention for which a patent is sought was in the prior art, either more than a year before the filing date to which the applicant is entitled, *in which case it is a 'statutory bar' and cannot be sworn back of*, or before the applicant's date of invention.

"*When a reference is not a statutory bar*, Rule 131 provides a procedure by which the applicant is permitted to show, if he can, that his date of invention was earlier than the date of the reference." [44 C.C.P.A. 820, 241 F.2d 760] (Emphasis added.)

As we view the matter, the etching process as applied to tantalum, being in effect in the "prior art" through publication of the British specification, the question is whether applying that process to zirconium, niobium, titanium and alloys of tantalum and niobium would be obvious to a person having ordinary skill in the art in view of the teaching of the Taylor patent. We feel sure it would.

The Taylor patent relates to electrolytic condensers, which are the same as appellants' electrolytic capacitors. Appellants recognized that it was old to use tantalum electrodes and that it was desirable to increase their surface area by etching them. Taylor likewise emphasizes tantalum as an electrode metal because it is a "film-forming corrosion-resistant metal" and recognizes the advantages of extended surface area. Along with tantalum he lists as other metals in the same category of known film-forming corrosion-resistant metals usable as electrolytic capacitor electrodes, zirconium, titanium and columbium (another name for niobium), exactly the same four elemental metals named by appellants.

It being shown in the British specification that tantalum can be etched for use as an electrode metal by appellants' process it seems to us that it would be most obvious to one skilled in the art, in view of the teaching of Taylor, to apply the same etching process to the other known electrolytic capacitor metals or to alloys of two of those metals. Appellants' method as originally disclosed was designed to etch a metal most resistant to corrosion and hence difficult to etch, namely tantalum, and if it would etch tantalum one would not be surprised if it etched the others. Certainly it would be obvious to try it and mere proof that it worked would not make it patentable over the disclosure of the British specification. 35 U.S.C. § 103.

The decision of the board is affirmed. Affirmed.