35 C.C.P.A.(Patents)

**Application of FREEMAN.**
**Patent Appeal No. 5433.**

Court of Customs and Patent Appeals.
May 4, 1948.

Allen & Allen, of Cincinnati, Ohio (E.S. Allen and Gibson Yungblut, both of Cincinnati, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting the single claim of appellant's application for patent. As finally rejected by the examiner the claim was numbered 11, but another numbered 12 was substituted for the appeal, the tribunals of the Patent Office evidently consenting thereto.

According to the specification, the subject matter "relates to a practice and apparatus whereby decorative deformations of shoe upper material are so formed therein as to simulate overlay pieces, inset pieces and the like, with which shoes have in the past been decorated." The claim on appeal is an apparatus claim which reads as follows:

"12. In combination for use in a die press, for use with a plate designed to be heated, and having its active face covered with a generalized embossing design, a work support element and gauging means on the work support element so arranged as to leave exposed on the work support an area of a piece of work to be impressed with the said design, and from which piece of work a shoe is to be built, and a relatively smooth raised portion on the work support so located with reference to the gauge as to bring into impression receiving contact a specialized portion of the exposed area of the piece of work to the exclusion of the remainder of the piece of work, in the precise location desired, as indicated by positioning the work with respect to the gauge, said specialized portion of said area corresponding to a portion of the shoe when finished from the said piece of work, which will indicate visually when the shoe is in use, a piece of material of different origin from the rest of the material."

In the brief for appellant the claim is simplified by a paraphrased version "setting forth only the positively claimed elements," as follows:

"In combination:

"1. A work support (for use with a heated over-all embossing plate in a die press).

"2. Gauging means on the work support arranged to leave exposed on the work support an area to be impressed with said design.

"3. A relatively smooth raised portion on the work support, so located with reference to the gauge as to bring a specialized portion of the exposed area of the work piece (to the exclusion of the remainder) into the precise location desired, as indicated by positioning the work with respect to the gauge."

It is thought that the following descriptive matter taken from the decision of the board will aid in understanding the device and its operation:

"To emboss an ornamental effect on leather applicant uses a plate having a face covered with a generalized embossing design or effect, capable of being heated and of an area larger than any of the areas to be ornamented. The embossed face of the plate is the one that will contact the finished surface of the leather. To support the leather, contacting its unfinished surface and holding its finished surface against an area corresponding to the area to be embossed, the device of the above claim is provided, applicant can thus use a single embossed die for any size area, merely by varying the size and shape of the supporting member of the claim.

"The appealed claim is limited by its positive recital to a work support such as is shown in Figs. 2 or 3, although the claim makes reference to the intended use of the work holder in a setting which includes the heated embossing plate."

There is disclosed a die plate which may be mounted in a machine of a type such as that shown in a patent to applicant, No. 2,035,956, issued in 1936, and not shown in the drawings in the instant case. The operating surface of the die plate simulates some desired finish for leather. The leather to be embossed is pressed against the die plate while hot. In one of the drawings there is shown a plan view of a work holder in the form of a plate which has a hold-down and gauging member. It is said that this member may be a "mask" of a character familiar in the shoe decorating art. It is taught that the plate may have gauging lines inscribed on its surface. A block on the plate is located on the work holder in proper position relative to the guide lines inscribed on the plate. The block itself is an outline of that portion of the work to be embossed.

In rejecting the claim for lack of invention over prior art, the Primary Examiner cited the following patents in the order named:

Schwartz, 269,721, December 26, 1882.
Stuparich, 748,232, December 29, 1903.
Reeder, 1,706,744, March 26, 1929.
Freeman, 2,035,956, March 31, 1936.
Mattlage, 2,165,286, July 11, 1939.
Knight, 2,278,618, April 7, 1942.

Neither the Primary Examiner in his statement following the appeal to the board, nor the board in its decision, set forth any analysis of the references. Apparently, both deemed the claim rejectable upon any one of the patents to Schwartz, Stuparich, or Mattlage, in view of either Freeman or Knight. The board, apparently, placed most emphasis on Mattlage and Knight.

Both the Solicitor for the Patent Office and counsel for appellant have analyzed each of the references, and we shall follow their example to the extent deemed necessary.

The patent to Schwartz discloses printing upon metallic foil by pressing the foil between a platen having a reticulate surface and a bed carrying an inked or colored type block or plate. The impression block may be smooth and unbroken so that the whole of the foil is printed in one or more solid colors; or it may be formed with raised letters, figures, or other characters which alone are printed on the foil.

The Stuparich patent relates to a process of manufacturing photographic mounts having a plain center portion and an em-

bossed or decorated margin or frame area. It provides a backing card having its central portion cut to the desired configuration. The card to be embossed is placed upon the backing card in proper alignment as to the edges of both cards and the two cards are pressed together by suitable means, the means specifically disclosed in the patent being "heavy metal" rollers which roll closely together, the cards being passed between them.

The patent to Reeder seems to have been cited merely for its showing of an embossing die heated by circulating hot water therein. Counsel for appellant makes no claim of invention based upon heating a leather embossing die and this reference requires no further attention.

The patent to Freeman (appellant here) relates to "shoe ornamenting machinery." It is a long document, has many drawings, and embraces many claims. The specific disclosures pointed out in the brief of the Solicitor for the Patent Office are "a work supporting anvil upon which the work is placed and aligned with respect to marking and cutting dies," and the teaching that "in order to insure accurate positioning and aligning of the work on the work support, gauging means are provided in a position bearing a definite relation to the dies and support."

The Mattlage patent "relates to embossed sheet material having a surface pattern, and more particularly to a process for producing patterns in continuous sheet material by embossing." The brief of the Solicitor for the Patent Office refers to the heating element of this patent (which requires no attention because of admissions of counsel for appellant hereinbefore referred to in connection with the Reeder patent) and to the recital in the specification reading:

"It has now been discovered that the same embossing plate may be used for the production of an almost unlimited series of designs by appropriate alteration of the contacting surface areas of the embossing beds which are relatively inexpensive."

A further recital of the specification is that of "embossing sheet material, which may be plain or may have been previously embossed either by plate or roller embossing by pressing it between the embossing plate and an embossing bed, the bed being of the type wherein a portion facing the embossing plate has been removed." Certain figures of the drawings show an arrangement wherein starting material is being passed between the embossing plate and the embossing bed from which latter a portion has been cut away.

The patent to Knight is stated in the specification to relate "to shoe machinery, and more particularly to improvements in die assemblies for use in ornamenting shoe uppers and shoe parts by the formation of cut-outs or perforations in portions thereof, and also by the application of printed markings in the work."

In the brief of the Solicitor for the Patent Office it is pointed out that the Knight die assembly is used in a machine having pressure applying means to provide relative movement between a supported work piece and the operating elements of the die, and that a gauge mask is provided, consisting of a frame and a gauge plate which is shaped to provide gauging edges.

In his brief, counsel for appellant treated the Schwartz, Stuparich, and Mattlage patents as references relating to embossing and the Freeman and Knight patents as "showing ornamenting machines involving some problem of work location," and, after discussing the references separately, summarized briefly his reasons for contending that it was error to deny patentability to the appealed claim.

With respect to the Schwartz, Stuparich, and Mattlage patents the brief states:

"These references may thus be summarized by saying that they all show a selective printing or embossing where the supporting surface is coextensive with the embossing plate, or element, so that the problem of locating a small area less than the area of the work piece which is to be embossed and which must be precisely located with respect to the boundaries of the work piece, is certainly not solved by these references.

"Applicant has for the first time conceived of the combination of a large, overhead, reciprocating die, a lower work sup-

port having a shaped raised portion which in coaction with the die will accurately determine the *area* of the embossing treatment, and a gauging means which will locate the work piece with respect to the raised portion so that the accurately determined area of embossing can be *accurately positioned* with respect to the periphery of the work piece.

"The raised portion is of lesser area than the work piece. It is covered and obscured by the work piece and the work piece must be accurately located even though the raised portion lies inward of at least three of its edges. If the raised portion is a platen, edge registration of the work with the platen is impossible,—yet this is the only suggestion made by the prior art." (Italics quoted.)

One difficulty confronting appellant in the consideration of the foregoing contention is that the limitation reading "The raised portion is of lesser area than the work piece," which is urged as distinguishing from the prior art, is not expressed in the claim, and it is, of course, well settled that limitations not in a claim need not be considered. Certainly we should not reverse a decision of the board by reading into a claim a limitation not expressed in the claim and not considered by the board.

The claim does specify "a relatively smooth raised portion on the work support so located with reference to the gauge as to bring into impression receiving contact a specialized portion of the exposed area of the piece of work to the exclusion of the remainder of the piece of work * * *," but this limitation, we think, is clearly disclosed in a drawing of the Mattlage patent.

It is conceded, however, in the brief of the Solicitor for the Patent Office that "the basic references do not disclose how to precisely locate the work piece." This, as we understand it, means that it is conceded that there is no disclosure of how to place the piece which is to be embossed or ornamented in conformity with that limitation of the claim reading, "in the precise location desired, as indicated by positioning the work with respect to the gauge."

It has been pointed out that both Freeman and Knight provide gauging means of kinds described respectively in their specifications and it was held by the tribunals of the Patent Office, in effect, that there is no invention in providing a gauging means where shoe parts are being embossed, in view of either one of the patents to Freeman or Knight, but, as we understand it, this holding does not have reference to the limitation in the claim relative to placing the work piece "in the precise location desired * * *", but to that limitation in the earlier part of the claim reading "gauging means on the work support element so arranged as to leave exposed on the work support an area of a piece of work to be impressed with the said design, and from which piece of work a shoe is to be built." This limitation is very broad and we are not disposed to disagree with the view that it shows nothing patentable over the gauging means of either Freeman or Knight, even though it may be true that in fact the gauging means disclosed by them might not serve appellant's purpose. If he had something structurally different he should have defined it in the claim.

It has not been held, of course, that the structural features shown in the prior art are the same as those named in the claim. The holding is to the effect that no invention was involved in modifying the prior-art features so as to meet the features of the claim.

We have carefully considered the question of whether modifying the prior art in a manner which enables greater precision in positioning the work piece with respect to the gauge amounts to invention, assuming that appellant has done that. We are not convinced it did amount to invention.

There are other questions in the case but they are of a minor character and their determination is not important. So, we omit discussion of them.

The decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.