44 C.C.P.A. (Patents)

**Application of Clifford L. JEWETT and John M. Case.**

**Patent Appeal No. 6268.**

United States Court of Customs and Patent Appeals.

May 27, 1957.

Rehearing Denied Oct. 10, 1957.

Harold J. Kinney, St. Paul, Minn. (Mark W. Gehan and Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON, retired, Judges.

JOHNSON, Chief Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office rejecting claims 9, 10, and 11 of appellants' application No. 450,149, filed August 16, 1954, for "Planographic Printing Plate."

Claims 7–11, which appellants had substituted for finally rejected claims 1–5, were originally before the board for its consideration. The board's rejection of claims 7 and 8, on the ground of double patenting over claims allowed in appellants' prior application No. 199,566, filed December 6, 1950,[1] has not been assigned as error and thus is not before this court for review.

Claim 11 is illustrative and reads as follows:

"11. A presensitized, dimensionally stable plate suitable for lithographic printing and related uses, and capable of being shipped in light-proof packages, stored and then used weeks or months after manufacture, comprising an aluminum sheet having on at least one surface thereof a permanently hydrophilic scum-preventing and tone-reducing film, said film overlying and being firmly bonded to said surface of said sheet and being substantially free of water-soluble material, said film being further characterized in that it will cause an in situ insolubilized diazo image strongly to adhere to the surface of the sheet, and over and in contact with said film a thin coating of a light-sensitive diazo resin, said light-sensitive material being characterized in that, upon exposure of the plate to ultra-violet light through a stencil or negative, it will react in the exposed portions, expelling nitrogen from the molecule and forming a water-insoluble hydrophobic and organophilic material which is tightly bonded to said permanently hydrophilic film, providing a printing image, the light-sensitive resin material being readily washed away from the unexposed areas, leaving the permanently hydrophilic film bare in said areas, said hydrophilic film being further characterized in that it will prevent the metal from causing decomposition of the diazo light-sensitive material, thus providing long shelf life for the presensitized plate."

The alleged invention relates to presensitized lithographic printing plates, capable of being stored and then used long after their date of manufacture. These plates comprise three essential elements:

(1) A supporting metal base sheet of aluminum or other related metal,

(2) an intermediate, isolating layer or film which is hydrophilic, scum-preventing and tone-reducing, and

(3) a surface layer composed of a light-sensitive, water-soluble diazo resin.

In use, a desired configuration on the light-sensitive layer is exposed to light, rendering such configuration water insoluble and organophilic. The sensitive layer is developed by washing with water, thus removing the light-sensitive resin from the unexposed area. The water-dampened surface is coated with a greasy ink which adheres only to the exposed (organophilic) portions of the surface layer.

The references relied upon are:

Kalle (French) 904,255 Feb. 19, 1945; Clerc: "La Technique Des Reproductions

---

1. Claims 7 and 8 of the instant application and three allowed claims of application No. 199,566 were subsequently included in appellants' application No. 519,900, filed July 5, 1955, as a division of the instant application and as a continuation-in-part of application No. 199,566. Application No. 519,900 issued on July 26, 1955, as patent No. 2,714,066, and thereafter application No. 199,566 became abandoned.

Photomechaniques"—Vol. 1, 1947; Publ. by Establissements Bouzard-Calmels, Paris: Pages 356, 357 and 509–519.

The French patent to Kalle discloses a plate suitable for lithographic printing comprising, in one embodiment, three elements generally corresponding to those in appellants' plate:

(1) A supporting base sheet of aluminum or zinc,

(2) an intermediate porous layer on said sheet of oxidized, fluorine or phosphorous containing compounds of aluminum, applied by a chemical or electrochemical process, and

(3) a surface layer composed of a water-soluble, light-sensitive diazo compound.

Upon exposure to light of a desired configuration, said configuration is insolubilized. The plate surface is washed with water, thus removing the unexposed portions of the diazo compound. The dampened plate is then ready for printing.

The Clerc publication refers to the French patent and also contains descriptions of lithographic "desensitization" techniques to be used in conjunction with diazo-coated metallic sheets.

The examiner rejected claims 9–11 on two grounds: (1) as failing to properly define the asserted invention, and (2) as unpatentable over the French patent to Kalle or the Clerc publication. The board, in reviewing the examiner's rejection, was of the opinion that both rejections were subject to the same considerations and were related to one another since the examiner was of the opinion that the claims fail properly to define the asserted invention in such a way as to escape the references. The board accordingly considered both rejections together.

Appellants contend that the board's action in considering the rejections together amounts to an express reversal of the examiner's first ground of rejection or, at the least, to an implied reversal and that, therefore, this ground of rejection is not properly before this court. The Commissioner, on the other hand, argues that the board did not expressly reverse the examiner as to any ground of rejection and that, therefore, both grounds are before us. In the view we take of this case, it is not necessary to decide this question, as will hereinafter be seen.

The board, conceding that invention resided in the lithographic printing plate disclosed by appellants (as evidenced by allowed claims in appellants' prior application heretofore mentioned), was of the opinion that the general combination of elements claimed was anticipated by the French patent and that the invention, if any, resided in the intermediate layer of the combination. It concluded that the description of said layer in terms of its obviously desirable characteristics was not sufficient to patentably define over the French patent. In its rejection, the board also relied upon the disclosure of the Clerc article, though appellants contend that it is not clear whether the board was using said disclosure to supplement that of the French patent or by itself as a separate and distinct reference. We are of the opinion that the board considered them independently, each as an individually effective reference against the claims; we, accordingly, will consider them in the same manner.

Claim 11 has been hereinbefore set forth. Appellants do not dispute the board's finding that the aluminum base and diazo resin recited therein are shown by the French patent. They do contend, however, that the intermediate layer recited in this claim is not shown by said patent. Appellants' intermediate layer is defined by the following characteristics: (1) permanently hydrophilic; (2) scum-preventing; (3) tone-reducing; (4) it overlies and is firmly bonded to the surface of the aluminum; (5) it is substantially free of water-soluble material; (6) it will cause an in situ insolubilized diazo image strongly to adhere to the surface of the aluminum; (7) it will prevent the metal from causing decomposition of the diazo light-sensitive material. Appellants further contend that claim 11 inherently includes limitations

to the effect that the intermediate film is non-porous and is an isolating layer.[2]

We are of the opinion that the foregoing limitations are insufficient to render claim 11 patentable over the cited art and that the board's rejection of this claim must be sustained.

At the outset, we deem it desirable to point out that the plate of the French patent is designed to be used in substantially the same manner as is appellants' plate. Regardless of how effective the Kalle plate is, its proper use depends, as do all plates of this nature, on its ability to attract ink only in the exposed areas of the light-sensitive coating. Pursuant to this proper use, the exposed portions should be organophilic and hydrophobic whereas the portions of the plate underlying the unexposed portions after said portions have been washed away should be hydrophilic. Thus, by moistening the exposed and developed plate with water, as in the examples set forth in the French patent (see especially examples 3, 4 and 6), the water will be retained by the hydrophilic surface underlying the unexposed portions of the plate and will be repelled by the hydrophobic, exposed portions. Ink will not readily adhere to the former but will adhere to the latter. So much was not only well known in the art prior to appellants' entry into the field but is, as well, adequately suggested by the French patent.[3] Appellants, of course, do not claim to be the first inventors of a plate designed to be used in the foregoing manner but, rather, of a specific plate which is more adequately suited to such use.

With this in mind we may proceed to further analyze claim 11. The phrase "permanently hydrophilic" does not mean, of course, that the intermediate layer will remain hydrophilic indefinitely and appellants do not so contend. As the board correctly stated, it "is a relative term, it being asserted only that the claimed article is sufficiently stable to provide a reasonable time for distribution and so-called shelf life." As aforestated, it was recognized in the art that the non-image area should be hydrophilic. Unquestionably, the porous coating of the French patent in the non-image area is hydrophilic at least to some degree. Thus, the limitation "permanently hydrophilic" merely sets forth an obviously desirable characteristic of the porous film of the French patent (whether or not said film does, in fact, provide a reasonable time for distribution and shelf life of the plate). Similarly, "scum-preventing" and "tone-reducing" (phrases which apparently relate to the ability of a surface to remain ink-free) are, as well, obviously desirable characteristics of the non-image surface of the porous layer of the French patent. That it is desirable to have the porous layer of the French patent firmly bonded to both the aluminum base and the diazo coating is self-evident, from the very nature of the article in question. And that the intermediate layer should be free of water-soluble material is, as well, obvious, for otherwise, when the plate is washed with water, the intermediate layer would, in part, be washed away and with it, the diazo coating. We also agree with the board that the "last clause of

2. As stated in appellants' reply brief:
 It stretches reason to assume, as does the Commissioner's brief, that a layer which (1) is a film, (2) is sandwiched between two other layers (metal sheet and sensitized coating), (3) is tightly bonded to both, (4) is permanently bonded to both, and (5) prevents decomposition of one layer by the other, is not an isolating layer. By the same token, particularly the prevention of decomposition, such intermediate layer or "film" is inherently spelled out as substantially non-porous.

3. "The process which is the object of the present invention is based on the fact that in consequence of the different properties of the diazo compounds and their products which decompose in the presence of light *we can obtain after exposure to the light of sensitized metal plates or sheets a differentiation between the parts exposed of the surface layer and its non-exposed parts in so far as concerns their capacity of absorption for water or oily paint.*" (Emphasis added.)

claim 11 referring to absence of destructive effect of the metal on the light, (sic) sensitive layer is also an obvious desirable condition of the combinations disclosed by the references." This is evident from appellants' review of the prior art in their specification, wherein it is stated that the light-sensitive materials used in the past were caused to decompose by the metal on which they were coated. Whether or not the porous layer of the French patent is, in fact, fully effective in preventing such decomposition need not be considered for it is clear that such a characteristic is desirable in said layer. It is therefore clear that even if we assume that the limitation that appellants' intermediate layer is an "isolating layer" is inherent in the recited structure of claim 11, it seems clear that such a provision would be one which would be obviously desirable in the structure of the French patent. Appellants' contention that claim 11 inherently includes the limitation that their intermediate layer is non-porous [for reasons set forth in footnote (2)] whereas the French patent discloses a porous layer is not well founded. The word "porous" is a relative term and it no doubt is true that certain "porous" layers may serve, as well, as isolating layers. It is not clear, therefore, that non-porosity is an inherent limitation in claim 11. In view of this fact, this limitation cannot be read into the claim in order to avoid rejection over the prior art. In re Freeman, 168 F.2d 81, 35 C.C.P.A., Patents, 1127.

■ The foregoing analysis makes it evident that claim 11 is directed to the same broad combination as is disclosed in the French patent and purports to avoid the rejection over this reference merely by the inclusion of limitations to the obviously desirable characteristics of a commercially satisfactory lithographic plate rather than by the specific means or structure necessary to obtain such characteristics. In other words, appellants have, in their broadly recited claim 11, attempted to claim the obvious *result* desired rather than the means of attaining said result. The board's rejection of claim 11 is accordingly sustained.

Before passing on to a consideration of claims 9 and 10 and of the other questions raised on this appeal, it is necessary to dispose of several other arguments advanced by appellants. Appellants' contentions that the disclosure of the Clerc article is vague, indefinite and ambiguous and that, therefore, this article may not serve as an effective reference against their claims are, of course, obviated by our affirmance of the board's rejection of claim 11 on the French patent alone. Appellants' theory that the disclosures of a foreign publication and a foreign patent cannot be combined to negative patentability is also moot for the same reason. The board's refusal to confirm and give weight to appellants' alleged proof that the plate of the French patent is inoperative for its intended purpose is apparently assigned as error in appellants' reason for appeal No. 11. Only a casual reference to the Jewett and Case affidavit of August 6, 1954, of record in appellants' parent application and also here of record, in which appellants attempted to substantiate the claim of inoperativeness, is made in appellants' brief. In their reply brief they state that it "is beside the point whether Kalle French is 'completely inoperative'" and that whether "Kalle is 'completely inoperative' is not a necessary issue." Nothing else is said in either of appellants' briefs about whether the plate disclosed by the French patent is either "completely inoperative" or inoperative to any extent for the patentee's intended purpose. That it is commercially unacceptable is not necessarily equivalent to inoperativeness. In view of appellants' failure to discuss in their brief the board's refusal to accept their allegations as to the inoperativeness of the plate of the French patent and, furthermore, in view of their statements that the question of inoperativeness is not a necessary issue, we will not further consider this question.

■ Appellants' discussion of commercial success, while impressive, can

have no bearing in a case where the patentability of claims over the prior art is not in doubt. In re Pedley, 212 F.2d 199, 41 C.C.P.A., Patents, 868. Appellants' assertion that claim 11 must be considered in the light of their allowed claims [4] is without merit. In re Arbeit, 206 F.2d 947, 41 C.C.P.A., Patents, 719. While that case holds that comparison between allowed claims and those under rejection may, for cogent reasons, be sometimes made, we see no reason in this case to so do. Furthermore, the difference between the claims is evident on their face. Appellants contend that a subsequent British patent to Kalle,[5] the patentee of the French patent used to reject appellants' claim 11, indicates that even at that time it was recognized that the "porous" layer of the French patent was incapable of serving, and did not so serve, as an isolating layer.[6] It is to be noted that the portion of the British patent referred to by appellants does not necessarily refer to the plate of the French patent, for the discussion of said plate *follows* the statement quoted below in the British patent text. If we were to concede that the involved statement did refer to the plate of the French patent, it nevertheless does not say that the porous layer of said patent had *no* isolating properties but only that its isolating properties were not commercially effective. Be this as it may, we have heretofore pointed out that it is an obviously desirable characteristic of the intermediate layer of the French patent to "isolate" the diazo coating from the aluminum base, and for this reason, claim 11 does not patentably define over the disclosure of that patent. Whether or not the plate there described was commercially acceptable can have no bearing on this case.

Finally, appellants contend that the plate of the French patent does not, in fact, consist of an aluminum base, an intermediate layer and a light-sensitive layer but only of an aluminum base with the light-sensitive layer *incorporated into* the intermediate layer. Thus, in effect, they contend that the two layers of the French patent are in effect one. They rely for this assertion on language in claim 2 of said patent to the effect that the diazo compounds are *incorporated in porous layers* formed on metal plates. It is to be noted, however, that the patent speaks also of "coating" a plate having thereon a porous layer with the diazo compounds. Appellants, in their specification, use the same interchangeable terminology to describe their layers. Thus, at one point, appellants refer to "the *coating* of diazo light-sensitive resin" and at another point they state "the diazo resin is apparently absorbed to some extent in the surface of the thin silicate treatment." We have been shown no reason why we should conclude that the light-sensitive resin is any more "absorbed" or "incorporated" into the intermediate layer in the French patent than in appellants' plate. That the *specific* intermediate layer *disclosed* by appellants is more effective than that of the French patent is evidenced by the allowance of the claims heretofore mentioned. This, however, does not lend patentability to the claims before us.

Claim 10 differs from claim 11 only in the recitation of a Markush group which recites that the metal sheet shall be selected from the class consisting of aluminum, zinc, tin, magnesium, chromium and copper. Since at least one of the members of this group, aluminum, is disclosed by the French patent, this claim is

---

4. Claims 1 and 2 of patent No. 2,714,066.

5. Kalle & Co., et al. (British), No. 699,-413, November 4, 1953.

6. In discussing the prior art plates wherein water-soluble diazo compounds were added to metal plates, the patentee stated:

"* * * The light-sensitive layers of this kind on metallic supports have the disadvantage that they must be used shortly after their production, because it is impossible to store them in the unexposed state for a longer period of time owing to the decomposition of the light-sensitive substance caused by the metal."

unpatentable for the reasons employed in the rejection of claim 11.

■ Claim 9 differs from claim 11 in that in the former there appears an additional limitation that the intermediate layer is "of substantially the characteristics of a film formed by reacting aqueous sodium silicate with the surface of said aluminum sheet." We are of the opinion that this limitation adds nothing of patentable moment to what is otherwise included in claim 11. This phrase obviously does not serve to define a film formed by the stated method but only one possessing "substantially" the characteristics of such a film. Such a film has numerous characteristics which might or might not be included in the foregoing limitation. Is said limitation intended to include only the physical characteristics of such a film or the chemical, as well? If the former, which physical characteristics? If only the characteristics recited in claim 11 are to be included, it is clear, as has been heretofore discussed, that this phrase does not serve to define patentably over the French patent. Appellants' invention resides not in the recognition that it is desirable to employ an intermediate film of such characteristics but in discovering *what* film will perform the task. The foregoing limitation does not define the latter but, rather, the former. If the limitation is intended to include characteristics other than those recited in claim 11, it is not clear which of these is to be included. It is clear that it is not inclusive of *all* the characteristics of such a film due to the presence of the word "substantially." Thus, this limitation fails, due to its indefiniteness, to render claim 9 patentable over the French patent. The rejection of the Board as to this claim is accordingly affirmed.

Appellants, after the decision of the board on June 29, 1955, submitted a request for rehearing to the board on July 8, 1955. The board granted this request and rendered a second decision (which did not so modify the first decision as to, in effect, make the second decision a new one) on July 21, 1955. On August 12, 1955, appellants submitted a further request for reconsideration, which request was denied by the board under the provisions of Patent Office Rule 197 (January 1, 1953), amended March 3, 1954, which provides that:

"Any request or petition for rehearing for reconsideration, or modification of the decision, must be filed within thirty days from the date of the original decision, unless that decision is so modified as to become, in effect, a new decision, and the Board of Appeals so states."

Appellants then filed a petition with the Commissioner, requesting:

"1. That the Commissioner authorize and direct that this case be reconsidered by the Primary Examiner and that he make clear any basis for combining portions of the Clerc publication with the Kalle patent, or vice versa, as a basis for rejection of any of claims 9, 10 or 11, on appeal;

"2. That, in the alternative, the Commissioner authorize the Board to withdraw its decision of June 29, 1955, and grant a rehearing on reconsideration, in order that the views submitted in, and appended to, appellants' Further Request for Reconsideration may receive consideration;

"3. That the Commissioner authorize the withdrawal of the Board's decision of June 29, 1955, or, in the alternative, direct that the case be reconsidered by the Primary Examiner under the provisions of Rule 198, and that this be done prior to the present limiting date for appeal (August 28, 1955).

"That the Commissioner grant such other and further relief as is necessary in order that this case will not be required to be carried up further on appeal with the record unclear as to the Patent Office's basis for combining the Clerc publication with the Kalle patent, both foreign

publications, as a basis for rejecting claims 9, 10 and 11."

This petition was denied.

 Appellants assign as error both the board's refusal to review their further request for reconsideration of August 12, 1955 and the Commissioner's denial of their petition. As to the former assignment, appellants are without remedy in this court. 35 U.S.C. § 7 specifically states that the "Board of Appeals has sole power to grant rehearings." We, therefore, have no authority to order or to recommend that the board grants appellants another rehearing. As to the latter assignment, it is well established that this court is without authority to review the action of the Commissioner in cases of this character. In re Hatch, 167 F.2d 1003, 35 C.C.P.A., Patents, 1108. See also In re Mavrogenis, 57 F.2d 361, 19 C.C.P.A., Patents, 1063, and In re Slate, 108 F.2d 268, 27 C.C.P.A., Patents, 810.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate herein in place of COLE, Judge, absent because of illness.