**SCHELLER–GLOBE CORPORATION and Societe Quillery, Plaintiff–Appellants,**

**v.**

**MILSCO MANUFACTURING COMPANY and Swenson Corporation, Defendants–Appellees.**

No. 80–1344.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1980.

Decided Dec. 5, 1980.

Paul R. Puerner, Milwaukee, Wis., for plaintiffs–appellants.

Eric C. Woglom, New York City, for defendants–appellees.

Before SWYGERT, Circuit Judge, WISDOM,* Senior Circuit Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

This appeal arises out of an action for alleged patent infringement of Henrickson

---

* John M. Wisdom, Senior Judge from the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

patent 3,099,516 and Gonzalez patent 3,523,918. Both patents related to processes of manufacturing integral skin urethane foam products. Following a bench trial and the submission of post–trial briefs, the district court, with the exception of a few modifications made by the court, adopted the proposed findings of fact and conclusions of law submitted by the defendants.

These findings and conclusions completely demolished every spark of life of the plaintiffs' lawsuit. Not only was it determined that both patents were invalid because of anticipation by the prior art under 35 U.S.C. § 102 and obviousness in light of the prior art under 35 U.S.C. § 103, but also the patents were invalid for failure of their specifications and claims to comply with the definiteness requirements of 35 U.S.C. § 112. In addition, both patents were held to be unenforceable because of misuse; the Gonzalez claims were invalidated in accordance with the doctrine of *Application of Ruscetta*, 255 F.2d 687, 45 C.C.P.A. 968 (1958); and the Gonzalez patent was unenforceable because of the plaintiffs' failure to fulfill their duty of candor and fairness to the Patent Office. The court, finding that this was an exceptional case, also awarded attorneys' fees to the defendants. Finally, the patents received *coups de grace* by the holding that in any event the defendants had not infringed either patent.[1]

The courts, including this court, have from time to time had occasion to criticize what amounts to substantially verbatim adoption of findings of fact and conclusions of law tendered by a prevailing party.[2] The practice of so doing, as in many areas of judicial practices, has its pluses and minuses. The present litigation involved technically complex processes with numerous chemical terms and conflicting expert testimony. Once the court has determined the manner of disposition of the various issues presented it would be hoped that the prevailing party or parties would submit objective findings and conclusions rather than an advocate's partisan brief so that the proposals could be adopted by the court with very little modification. The temptation, however, to be speaking for the client rather than for the court seems to be one not easy to resist. Thus, for example, in finding A–5 the language appears that no one at Scheller–Globe "ever bothered to read the United States or French patent applications" and it would seem to us that "ever bothered" is the language of advocacy by putting a gloss of disdain on a simple finding that "there was no indication in the record that anyone at Scheller–Globe read the United States or French patent applications."

This circuit, while recognizing that the adoption procedure has been criticized, leaves the matter within the trial court's discretion and recognizes that the procedure can be of considerable assistance to a trial court where the evidence is highly technical. *Reese v. Elkhart Welding & Boiler Works, Inc.*, 447 F.2d 517, 520 (7th Cir. 1971).

Here, while it does appear to us that the findings of fact err on the side of being unnecessarily prolix and repetitious, we are satisfied that the district court did not abuse its discretion in substantially adopting the defendants' proposed findings and conclusions. We, in so holding, as will be herein indicated, are not expressing our opinion on the correctness of the determination of those issues which we find it is not necessary to reach. We are satisfied that the district court did decide each of the issues and *thereafter* did adopt the findings and conclusions consistent with the determination that the court had made.

■ Turning now to the findings of fact and examining them under the applicable clearly erroneous standard we are satisfied that the district court's findings of fact directed to the validity of the patents under 35 U.S.C. §§ 102 and 103 met the classic

---

1. The district court's findings of fact and conclusions of law are reported at 206 USPQ 42 (1979).

2. For the general discussion of the practice *see* 9 Wright & Miller Federal Practice and Procedure § 2578 at 702 *et seq.*

definitional basis of *U. S. v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), and we are not on the entire evidence, left with the definite and firm conviction that a mistake was committed with respect to these findings. We therefore adopt as the opinion of this court the findings of fact and the corresponding conclusions of law and hold that both patents are invalid for the reasons stated in the findings and conclusions pertaining only to the anticipation issue under 35 U.S.C. § 102 and the obviousness issue under 35 U.S.C. § 103. We need not reach, because of this holding, any of the other issues except as those issues bear on the matter of the allowance of attorneys' fees.

Turning then to the matter of attorneys' fees, the district court's conclusion of law was as follows:

> This is an exceptional case. An award of attorney fees is warranted and is ordered. 35 U.S.C. § 285. *Skil Corporation v. Lucerne Products, Inc.*, 503 F.2d 745, 750, 183 USPQ 396, 399 (7 Cir. 1974); *L. F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818, 824, 177 USPQ 673, 676–677 (7 Cir. 1973).

The earlier of the cited cases, *Strassheim*, involved a situation in which the patent owner was in possession of certain documents which clearly invalidated its patent. The patent owner not only failed to call such invalidating documents to the attention of the Patent Office but in addition failed to produce such documents in response to a discovery request during the first trial of the case. It was only during the second trial of the case that the documents were finally produced. The second of the cases cited, *Skil*, also involved misconduct during the trial of the case. There the court found certain crucial testimony of patent invalidity "amounted to an unconscionable act done with deceptive intent." *Id.* at 750. This court again addressed the matter of attorneys' fees in the later case of *Super Products Corporation v. D P Way Corporation*, 546 F.2d 748, 757–58 (7th Cir. 1976). The court there while recognizing that fraud was not the only inequitable conduct in dealing with the Patent Office

that would support an award of attorneys' fees also held that the misconduct must be accompanied by some element of willfulness or bad faith and that entitlement to an award of attorneys' fees required clear and definite proof. This court also in *Super Products* emphasized that the *Strassheim* award was based in essential part upon misconduct during the course of the litigation itself and cited *Skil* as being in accord.

Turning now to the findings of fact that this was an exceptional case, we do not find sufficient support in the findings of fact, nor in the evidence as a whole, to meet the *Super Products* requirement of clear and definite proof. Certainly, the mere fact that a patent is held by a trial court to be invalid as well as not being infringed should not per se establish an exceptional case. While the district court opined that this suit was one which should not have been brought, a reading of the three paragraphs of findings on this issue indicates that one of the principal premises on which the court determined that the case was exceptional was the meeting and correspondence with Mobay in 1976 and 1977. The district court's findings refer to four specific defense exhibits on the Mobay matter. These are all letters between patent lawyers representing either the plaintiffs or Mobay. The first of these letters, apparently from house counsel, is dated September 7, 1976, and is on the Mobay Chemical Corporation letterhead. The stationery indicates that among other products produced by Mobay are plastics and coatings, and polyurethanes. This letter indicates that there were two telephone conversations in August between the author of the letter and the patent counsel for the plaintiffs. The first letter for several pages pointed out the reasons for Mobay concluding that the two patents were either invalid or unenforceable. The next defense exhibit relied upon by the district court in the findings was a letter from a New York patent lawyer, apparently an outside counsel for Mobay, in which considerable attention was devoted to the Netherlands publication and to 35 U.S.C. § 119.

The third exhibit relied upon in the findings was a letter of reply from the plaintiffs' patent lawyer but rather than it being only "defiance," as characterized in one of the findings, it appears to us to be a response in a situation in which patent lawyers disagree either to the application or interpretation of sections of the patent statutes. The letter pointed out that the plaintiffs' attorneys had not asked for the advice given by Mobay nor had they intended to request an opinion although they had asked Mobay for decisional authority for the position taken which had not been furnished to any extent. The outside patent attorney responded to this in the fourth exhibit relied upon by citing the case of *Abington Textile Corporation v. Carding Specialists Ltd.*, 148 USPQ 33 (D. D.C. 1965).

For some reason, with which we are not acquainted, but which may well rest upon the fact that the district court adopted the defendants' proposed findings with very little change, there is no mention of what we regard as an important part of the Mobay exchange. This was an exhibit introduced into evidence by the plaintiff and was a letter under date of October 22, 1976, addressed to one of the counsel who had represented the defendants in this litigation. Because we deem this letter of substantial significance, rather than summarizing it we set the body of the letter forth in full:

As counsel for the plaintiffs in this matter we received a telephone call from patent counsel at Mobay Chemical Corporation last August wherein it was indicated to us that Mobay was conducting a study of the patents in suit. Subsequent to this telephone contact received from Mobay in August we received from them a letter wherein Mobay identified to us numerous alleged prior art references concerning the patents in suit.

Apparently they undertook their study of the patents in suit because they are selling chemical systems (for preparing integral skin urethane foam products) to numerous of their customers who are using the Mobay chemical systems as infringements of the patents in suit. These customers have apparently requested indemnification against the patents in suit from Mobay.

In order that the defendants will be apprised of the references identified by Mobay I am enclosing a listing of the reference materials identified in Mobay's letter to us with respect to each of the patents in suit.

In the event that you consider any of the listed reference materials to be more pertinent than the alleged prior art set forth in the defendants' answer to the complaint (or as set forth in defendants' answers to our earlier interrogatories) then please contact me and I will undertake to supply you with copies of the Mobay reference materials.

As indicated in the letter there were more than three pages regarding the two patents which were quoted from Mobay's letter to plaintiffs' counsel.

This letter, of course, puts quite a different light on whether Mobay is really a disinterested bystander volunteer or has on the other hand some direct interest in the outcome of the present litigation. At the very least, it would be a persuasive reason for plaintiffs to regard the Mobay briefing to them as being suspect. We have difficulty in conceiving if the Mobay correspondence demonstrated beyond peradventure that plaintiffs were engaged in a fruitless quest that the counsel for plaintiffs who had previously entertained an opinion contrary to that expressed by Mobay would have continued to ride to Doomsday. We think that a more explicit demonstration of invalidity or unenforceability from a source such as Mobay would have to be demonstrated before we could say that the litigator was continuing to litigate willfully or in bad faith.

The second paragraph of the findings of fact on the present issue concerns the *Ruscetta* case and the impact of the Netherlands and Belgium patents. As we read the plaintiffs' brief filed in this court dealing with these issues, and particularly with the Paris Convention and whether it is self-executing and with the application of § 119

and a proper interpretation of *Ruscetta*, we would not under any circumstances characterize their arguments as being frivolous or unrealistic. We do not say how we would decide these questions because we do not need to reach them. We only say that we think the position of the plaintiffs in continuing the litigation was not demonstrated to be in bad faith or of a willful nature under all the circumstances making it an exceptional case for the purpose of attorneys' fees.

We note further at this point, returning again to the letter of October 22, 1976 not mentioned in the findings, that it demonstrates to us an openness and candor with the opposing counsel who was directly involved in the litigation. Further, we note with interest that the conclusion of law adopted by the district court and prepared by the defense attorneys does not mention *Super Products* which was a most recent case in this circuit and which substantially confined *Strassheim* and *Skil*, which were cited, to misconduct during the course of the litigation itself. We have some concern whether the defendants who expressed alarm over the failure to call the Netherlands and Belgium patents to the attention of the Patent Office originally (even though the findings indicated that this might be explainable on the theory of negligence albeit gross) were similarly concerned with complete disclosure in submitting their proposed findings of fact and conclusions of law to the court either of all pertinent case law or evidentiary exhibits.

While the findings of fact pertaining to attorneys' fees do not mention the matter of misuse, no doubt that might have some bearing on whether a case is exceptional. Again, we note the holding of patent misuse was based solely on a single license offer to a third party. This was unlike *Hazeltine Research, Inc. v. Zenith Radio Corporation*, 388 F.2d 25 (7th Cir. 1967), *aff'd in part and rev'd in part*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), in which the potential licensee requested only a single patent but the licensor refused, offering only its package of 500 patents.

We tend to agree with the analysis of the plaintiffs in this respect:

The district court's holding of patent misuse for the improper package license where no license was entered into or coercion shown is still another example of the high likelihood of error which results when the district court makes a wholesale adoption of the findings and conclusions prepared by counsel.

Again, we do not reach, because we do not need to do so, a final determination on the misuse issue as such but observe that it should have little bearing on this being considered an exceptional case.

For the reasons stated herein, the judgment of the district court is affirmed only to the extent that the patents in suit are invalid for anticipation by the prior art under 35 U.S.C. § 102 and for obviousness under 35 U.S.C. § 103 and the judgment is reversed as to the allowance of attorneys' fees to the defendants. The parties shall bear their respective costs.