**Ronald E. MERRILL, Plaintiff,**

v.

**I.T.I., INC., an Illinois Corporation, Defendant.**

**No. 79 C 4346.**

United States District Court, N. D. Illinois, E. D.

Jan. 19, 1981.

Eugene O. Jarman, Austin, Tex., Martin S. Bieber, Chicago, Ill., for plaintiff.

William M. Lee, Jr., Wm. Marshall Lee, Lee & Smith, Chicago, Ill., Howard H. Darbo, Darbo & Vandenburgh, Arlington Heights, Ill., for defendant.

### ORDER

BUA, District Judge.

This patent infringement suit comes before the court on defendant I.T.I., Inc.'s

motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. The defendant contends that on the undisputed facts before the court no infringement of the two patents in suit occurred.

The threshold question presented by this motion is the proper construction of the patents in suit. First, the defendant claims that the patents in suit are limited on their face to disclosing the invention of building forms comprising a combination of a wall section and a footing section. Second, the defendant contends that even if this narrow construction of the language of the patent claims would not otherwise be required, the doctrine of file wrapper estoppel mandates such a construction in this case.

The two patents in suit are both owned by the plaintiff, Ronald Merrill. The earlier of the two, Patent No. 3,461,639, disclosed the invention of a product and a process

> wherein mesh-like members are manufactured to a desired footing and wall configuration and where, upon deposit of a quantity of concrete material intermediate the mesh-like members, the latter will serve as a form to determine the shape of the footing and wall being formed and will ultimately become a part of the wall structure.

Patent No. 3,638,382 discloses the invention of improvements to the No. '639 patent.

There are three claims made in the No. '639 patent. The first claim is for

> [a] prefabricated building form for use in the construction of an *integral concrete footing and wall structure* and comprising in combination,
> form members of irregular configuration arranged in a mutually spaced apart manner and *each having an upper and lower vertical portion interconnected by a horizontal portion, said spaced apart upper portions disposed to substantially define a wall and said spaced apart lower*

*and horizontal portions disposed to substantially define a footing,*
> wire rods intermittently attached to the opposing surfaces of said former members to rigidly brace said members in fixed relationship while permitting unobstructed concrete flow intermediate the members during pouring and tamping, said form members being of interstitial material whereupon said pouring and tamping a boundary layer of concrete will pass through and envelop said interstitial material (emphasis added).[1]

The third claim discloses a method of pouring a concrete structure using the prefabricated building forms disclosed in claims 1 and 2 and specifically claims, as one step of the process;

> depositing a quantity of fluid concrete material intermediate the interconnected interstitial material *to form simultaneously an integral footing and stem wall when set.* (emphasis added).

■ In *American Hoist & Derrick Co. v. Manitowoc Co.*, 603 F.2d 629, 630 (7th Cir. 1979), the Court of Appeals summarized the elements of patent infringement.

> To find infringement, the Court must determine that every element of a claim alleged to be infringed must be found in the accused device, *Mobil Oil Corp. v. Filtrol Corp.*, 501 F.2d 282, 291 (9th Cir. 1974)—that the accused device is a 'copy either without variation, or with such variations as are consistent with its being in substance the same thing.' *Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 351 (9th Cir. 1963), quoting *Burr v. Duryee*, 68 U.S. 531, 573, 1 Wall. 531, 573, 17 L.Ed. 661 (1863).

Reading the patent claims alone, it seems clear that the building forms claimed require a combination of both a wall and a footing section. The proper construction of the claims of No. '639 become crystal clear when the file wrapper is considered.[2] Giv-

---

**1.** The second claim is dependent on this claim.

**2.** The court also notes that with the exception of the affidavit of Rainer Obst, the materials in support of and opposing the defendant's mo-

tion are not authenticated pursuant to Rule 56(e), Fed.R.Civ.P. No objection having been made to this defect by either party, the court considers any such objection to be waived. *Klingman v. National Indemnity Co.*, 317 F.2d 850, 854 (7th Cir. 1963).

en the prosecution of the patent application as disclosed by the file wrapper for Patent No. '639, this court has no trouble in concluding that the scope of the claims in No. '639 must be limited to (1) building forms constructed of mesh-like members which define both a footing and wall structure and (2) a method of constructing a concrete structure which results in the simultaneous formation of a footing and a wall.

As the Supreme Court has said:

It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the patent office. . . . Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent.

*Graham v. John Deere & Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 701, 15 L.Ed.2d 545 (1966).

In this case the file wrapper for No. '639 discloses a significant amendment of the claims in the original application. This amendment makes it clear that the examiner considered the use of mesh-like members in building forms for use in constructing concrete structures obvious in light of the prior art. Each of the claims in the original application were rejected. Original claim 1, upon which original claims 2–4 depended, reads as follows:

A building form for use in the construction of a concrete structure and comprising in combination, form members arranged in a mutually spaced apart manner to receive poured concrete material there-between and to generally define the outer wall surfaces of the concrete structure being built, said form members being of interstitial material for the restricted passage therethrough of some of the poured concrete.

Original claim 5, upon which original claims 6 and 7 depended, reads as follows:

The method of constructing a concrete wall structure comprising the following steps; shaping members of interstitial material into the general configuration of an exterior surface of a concrete structure, interconnecting said material to provide a unitary building form having the general outline of the desired concrete structure, and depositing a quantity of fluid concrete material intermediate the interconnected interstitial material.

The patent examiner rejected claims 1, 2, 5, 6 and 7 as being obvious in light of prior art, citing a British patent and 35 U.S.C. § 103.

In light of this patent office action, the plaintiff amended his application and made the three modified claims outlined above at p. 974. He also made various changes in the patent specifications. Changes in the amended application emphasized the pouring of a footing and wall structure simultaneously. For example, inserted on page 2 of the original application's specification at the end of the first paragraph was the following language:

The usual delay of at least one full day is encountered between the pouring and setting of a footing and the pouring of a stem wall. This delay is obviated by the present invention since their pourings are simultaneously accomplished.

The remarks following the amendment to the original application are unambiguous in showing that the distinguishing feature of the claimed invention was its ability to form a footing and wall simultaneously. The plaintiff stated clearly in these remarks that a

British Patent to Blunt, No. 659,991 discloses forms admittedly of wire mesh into which concrete is poured . . .

With regard to the teaching of Murray (Australia 11,785) a pre-cast block construction is shown in Fig. 13 wherein cement blocks 31 are placed apart to receive a quantity of concrete therebetween. Obviously they are not simulta-

neously formed nor is any wire mesh utilized. *It is not believed to be obvious as to how the upright 'triangular—sectioned channels' could be formed having continuous vertical, horizontal and vertical portions similar to applicant's forms...*

Applicant is now in claims 8 through 10 [claims 1–3 at issue] presenting the form structure and method in a manner clearly defining over the art of record. *Particularly not evident nor obvious from the teachings of the prior art are concrete wall forms shaped for the construction of a footing and stem wall formed in one pouring.* (emphasis added).

■ This court's reading of the patent specification and file wrapper for No. '639 leads to the conclusion that the doctrine of file wrapper estoppel is justifiably relied on by the defendant.

The doctrine [of file wrapper estoppel] is based on the theory that the prior art is either in the public domain or already patented, so that the patentee may not claim it as part of his invention. By redrafting or abandoning a claim in the face of a prior art rejection, the patentee is conceding that he has not invented what he thereby disclaims, and therefore will not be heard to assert, at a later date, what he disclaimed as his invention.

*Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F.2d 66 (3d Cir. 1972).

Having arrived at this construction of the No. '639 patent, the only question remaining is whether or not the defendant ever manufactured building forms in a configuration permitting the simultaneous pouring of both a footing and wall structure.

Rainer Obst has been president of defendant I.T.I., Inc. since 1978. He has submitted an affidavit uncontradicted by plaintiff which states that

All building forms manufactured, used and sold by I.T.I. have incorporated a wall section.

I.T.I. has never manufactured, used or sold a building form incorporating a footing (or foundation) section.

Affiant has conferred with Mr. Merrill on several occasions, between June, 1978 and October, 1979, both personally and by telephone, and has advised Mr. Merrill that the building forms of I.T.I. do not and have never incorporated a footing (or foundation) section.

During his deposition, Mr. Merrill was asked by defendant's counsel whether he had "ever seen a form manufactured by the defendant which included both the wall and footings for simultaneous pouring of the wall and footing." He responded that he had never seen such a form. Mr. Merrill was also asked whether he had ever received any reports from anyone that the defendant had produced such a form. He answered that he had never received any such reports.

The plaintiff responded to this motion for summary judgment by filing a memorandum with attached exhibits. The plaintiff's response to the motion for summary judgment does *not* dispute the only material fact asserted in defendant's motion, i. e. that I.T.I. never produced a combination wall and footing building form. An affidavit of Otha McGill attached to the plaintiff's memorandum as Exhibit A simply asserts that

I, Otha E. McGill, have purchased concrete form material which I have used as foundation and wall material. This form was purchased from I.T.I., Inc.

This affidavit simply does not dispute the fact that defendant never manufactured a combination footing and wall form. The same is true of the second McGill affidavit attached as Exhibit B to the plaintiff's memorandum. This affidavit states that

I have been told by a representative of I.T.I. Inc. that the concrete forms they make can be used for footing, foundations, and walls.

The defendant has admitted that the forms manufactured can be used to build a foundation or wall or basement, as well as other concrete structures. It simply denies that its forms contain one essential element of the patent claims at issue, i. e. the *combination* of footing and wall.

The court notes that the defendant's testimony at the preliminary injunction hearing previously held in the case does not give rise to any reasonable inference that the defendant produced infringing forms. The defendant's president testified that he had "used" the patents, but it is apparent to this court that Mr. Obst was totally unfamiliar with the complexities of patent law and that his statement embodied a conclusion of law as to the proper construction of plaintiff's patents. The court notes that at the time of the hearing it appears that both plaintiff's counsel and defendant's counsel appeared to be proceeding on the assumption that because defendant's forms were identical to the forms actually produced by plaintiff, plaintiff's patents had been infringed. At this time, however, it is clear from plaintiff's own testimony that he has not produced any building form which falls within the scope of his patent since 1972. During his deposition Mr. Merrill was asked the following questions by defendant's counsel and gave the following answers:

Q What is your current practice with respect to [pouring the footing and wall of the concrete structure]?
How are these poured?

A Our practice has been, ever since, oh, I guess, 1971 or '72, is to eliminate the footing part of the panels that we used to make. We don't use that.

Q Why is that?

A It proved to be not economical.

Q Do you mean you used too much concrete, or took too long, or what was the reason?

A It's just not a marketable product. The manufacturing process was not—I am lost for a word—it's too expensive to make the forms for the footing section.

Q So that since about 1971, then, the REDI–FORM product has been just the wall sections, and not the footing portion?

A Yes.

Q You did, at some time, however, manufacture forms with the footing section included, did you?

A Yes. My original patent [No. '639], I think showed that.

■ It is elementary that a product cannot be infringed, only a patent can. The Court of Appeals for the Seventh Circuit has illustrated this distinction.

The measure of plaintiff's monopoly must be determined by the claim of the patent in suit. Neither plaintiff's commercial package nor defendant's commercial package respond to the Coleman patent claim. A charge of infringement under these circumstances cannot be based on similarity to plaintiff's commercial structure. The claims of plaintiff's patent, not his invention govern. *Universal Oil Products Co. v. Globe Oil & Refining Co.*, (7th Cir.) 137 F.2d 3, 6 (1953), *aff'd* 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944). *See Aro Mfg. Co. v. Convertible Top Co.*, 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed. 592 (1961).

*The Taylor-Reed Corp. v. Mennen Food Products, Inc.*, 324 F.2d 108, 114 (7th Cir. 1963).

■ Given the uncontradicted and explicit deposition testimony and affidavit of Mr. Obst that his company has never produced a building form combining a wall section with a footing section, no reasonable inference to the contrary could be drawn from his testimony that he "used" the patents. While he may have used them, he did not infringe them. Since plaintiff has not offered a single shred of evidence to indicate that I.T.I., Inc. has ever produced any combination footing and wall forms, this court must grant defendant's motion for summary judgment with respect to Patent No. 3,461,-639. The defendant has not produced any building form which infringes Patent No. '639, because it has never manufactured a form combining a footing and wall section.

With respect to the alleged infringement of Patent No. 3,638,382, the defendant has made essentially the same argument regarding non-infringement. This court agrees with defendant's argument that, given the claims stated in the No. '382

patent, only a building form incorporating a wall section and a footing section in combination could infringe Patent No. '382. Simply put, the claims made in No. '382 are improvements on the invention disclosed in the No. '639 patent. There are two claims. The first claim is for

A form comprised of two sections for the construction of a concrete wall and foundation, said form for assembly at the construction site and comprising in *combination*,

*a foundation section* comprising an angle iron framework and having expanded metal laths extending lengthwise thereof to generally define the sidewalls of the concrete foundation to be poured,

*a wall form section for placement upon said foundation section* and having form side members of expanded metal lath disposed in upright spaced-apart relationship, channel members secured in an opposed manner to the inner surfaces of said form side members ... *and*

*retention means secured to said foundation section* and comprising a pair of opposed angle irons secured lengthwise of said foundation section and transversely spaced thereon receiving in an inserted manner the lower terminus of said wall form section therebetween to facilitate forming of said sections at the work site. (emphasis added).

The second claim is for the form disclosed in claim one with the addition of insulation.

Given the undisputed fact that I.T.I., Inc. never produced a form combining both a wall section and a "footing (or foundation)" section, the court finds that I.T.I., Inc. has not infringed Merrill Patent No. 3,638,382.

 Also before the court is defendant's motion for attorney's fees. The defendant contends that the court should find that this is an "exceptional" case warranting an award of fees to the defendant. This court

sees no clear indication of any fraud or bad faith in the filing or prosecution of this suit by plaintiff or his counsel. Therefore, the request for attorney's fees will be denied. *Scheller-Globe Corp. v. Milseo Manufacturing Co.*, 636 F.2d 177 (7th Cir. 1980).

There being no genuine issue of material fact regarding defendant's contention that it never produced a building form of the type claimed by Merrill in the two United States patents in suit, the defendant's motion for partial summary judgment is granted [3] and its request for attorney's fees is denied.

IT IS SO ORDERED.

---

3. The issues with regard to trademark infringement and the infringement of the Canadian patent in suit remain. It appears to the court that the plaintiffs have failed to allege any act of infringement by defendants with regard to the Canadian patent in their complaint. The court would entertain a motion to dismiss or for summary judgment with respect to the Canadian patent since it does not appear from plaintiff's complaint that any act of infringement occurred in Canada.